## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RICHARD OBENAUF,

     Plaintiff,

v.                                 No. CIV 11-0085 JB/KBM

FRONTIER FINANCIAL GROUP, INC.,

     Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Brief on Damages, filed April 8, 2011 (Doc. 12)("Brief"); and (ii) the Plaintiff's Unopposed Motion for Leave to File Notice of Additional Authority, filed May 3, 2011 (Doc. 14). The Court held an evidentiary hearing on April 13, 2011. The primary issue is what damages the Court should award Plaintiff Richard Obenauf against Defendant Frontier Financial Group, Inc. ("FFG"). The Court grants in part and denies in part the requests in R. Obenauf's Brief. The Court awards R. Obenauf $150.00 for emotional distress, $300.00 in statutory damages, $11.08 in compensatory damages, and enjoins FFG from making R. Obenauf's telephone ring. The Court also awards R. Obenauf $2,500.00 in attorney's fees.

### FACTUAL BACKGROUND

1.      R. Obenauf has worked as a part-time lecturer in the honors program at the University of New Mexico since August 2010, and he is a candidate for a Ph.D. in medieval and renaissance English literature. <u>See</u> Transcript of Hearing at 7:15-19

(taken April 13, 2011)(Treinen, R. Obenauf).[1]

2.      In May of 2010, R. Obenauf returned to Albuquerque, New Mexico, from Chicago, Illinois -- where he moved temporarily for graduate school.  See Tr. at 8:1-9 (Treinen, Obenauf).

3.      Upon his return, he was assigned a telephone number that previously belonged to a presumptive ne'er-do-well named Roger Neugebauer.  Neugebauer was not a man to pay his bills.  As a result, R. Obenauf received telephone calls from numerous debt collectors seeking to contact Neugebauer about his unpaid debts.  See Tr. at 9:18-10:3 (Treinen, R. Obenauf).

4.      When debt collectors called, R. Obenauf would send them a letter stating he was not the ne'er-do-well they sought, and they would usually "quit calling immediately." Tr. at 10:7-9 (Treinen, R. Obenauf).

5.      R. Obenauf first heard from FFG on August 27th, 2010, at 3:14 p.m., when FFG called him regarding a debt Neugebauer owed.  See Tr. at 8:10-18 (Treinen, R. Obenauf).  R. Obenauf recorded the call and played it at the hearing.  See Tr. at 8:23-9:14 (Treinen, R. Obenauf).

6.      In the course of the August 27th, 2010, 3:14 p.m. call, R. Obenauf asked for the caller's address, but the caller refused to provide it.  R. Obenauf then asked to speak with a manager, hoping a manager would provide contact information.  In response to his request, the caller placed R. Obenauf on hold and then disconnected the call.

--------

[1] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may have slightly different page and/or line numbers.

See Tr. at 8:18-22 (Treinen, R. Obenauf).

7.      At 5:32 p.m. that same day, R. Obenauf received another call from FFG.  When R. Obenauf answered the phone, he heard a recording stating that FFG was calling about a bad check and instructing him to contact 866-443-6985.  See Tr. at 10:19-24 (Treinen, R. Obenauf).  R. Obenauf attempted unsuccessfully to record the second call; his "device did not function properly."  Tr. at 11:1 (Treinen, R. Obenauf).

8.      R. Obenauf did not hear from FFG again until December 2010, when he found on his caller identification apparatus one call each from 915-317-1175 and 915-317-1181.  See Tr. at 11:7-12 (Treinen, R. Obenauf).  On December 20, 2001, he telephoned 915-317-1181, and discovered the telephone number belonged to FFG.  See Tr. at 11:14-21 (Treinen, R. Obenauf).

9.      Internet-sleuthing led R. Obenauf to two possible addresses for FFG: (i) 419 Stephanie St. in Henderson, Nevada 89014; and (ii) 1291 Galleria Dr. #170 in Henderson, Nevada 89014.  See Tr. at 11:22-12:23 (Treinen, R. Obenauf).

10.     R. Obenauf sent a certified letter to each address, asking FFG to stop making his telephone ring.  His letter stated:

> Re: Notice to Cease Contact Regarding Debt for Roger Neugebauer
>
> . . . .
>
> I am writing to you because I believe your agency has contacted me by telephone regarding another person's debt.
>
> I assume you were calling not for me, but for someone else -- the number 505-881-5245 has been assigned to me since May 2010, but, on the basis of numerous calls I have received from other debt collectors, I believe this number previously belonged to someone

named Roger Neugebauer.

I dispute owing any debt on Mr. Neugebauer's account, and so I am requesting that you cease all communication to my phone or otherwise causing it to ring, as I am not the" person you are looking for, but, rather, someone who assumed this other person's number when it was reassigned by the phone company.

If you persist in believing that Mr. Neugebauer is somehow connected with my address and/or phone number, please provide proof of your claim. Moreover, you should direct all future correspondence in writing as outlined in the Fair Debt Collection Practices Act (FDCPA) and to cease all communication with me by telephone, or I will be forced to take further legal action.

Letter from R. Obenauf to FFG at 1 (dated December 20, 2010), filed April 8, 2011 (Doc. 12-1)(emphasis original)("Letter"). See Return Receipt at 1 (dated December 23, 2010), filed April 8, 2011 (Doc. 12-1, at 2); Tr. at 11:23-12:1 (Treinen, R. Obenauf).

11.     The letter sent to 419 Stephanie St., Henderson, Nevada 89014 was returned undelivered. See Tr. at 12:18-20 (Treinen, R. Obenauf).

12.     FFG received the letter sent to 1291 Galleria Dr. #170, Henderson, Nevada 89014 on December 23, 2010. See Return Receipt at 1; United States Postal Track Confirm Receipt, filed April 8, 2011 (Doc. 12-2); Tr. at 12:24-13:3 (Treinen, R. Obenauf).

13.     R. Obenauf paid $5.54 to send each certified letter, for a total cost of $11.08. See Tr. at 13:4-6 (Treinen, Obenauf).

14.     After FFG received the letter on December 23, 2010, it called R. Obenauf one more time on December 27, 2010 at 12:42 p.m., from 915-317-1181. See Tr. at 13:7-17 (Treinen, R. Obenauf).

15.     R. Obenauf did not speak with the caller on December 27, 2010. Instead, FFG left

a message about a bad check, he stated that he called later to confirm that the call was from FFG, suggesting that he found the telephone number on his caller identification apparatus.  See Tr. at 13:22-25 (Treinen, R. Obenauf).

16.     FFG's calls bothered R. Obenauf.  On August 27, 2010, R. Obenauf was translating a medieval morality play in a difficult dialect, which required "total concentration" Tr. at 14:5-15:4 (Treinen, R. Obenauf).   The August 27, 2010 telephone calls interrupted Obenauf's concentration, and distracted him from returning to his work for the balance of the day.  See Tr at 14:5-15:4 (R. Obenauf)("I felt violated that day.").

17.     The calls "really disturbed" R. Obenauf, and "[j]ust pretty much ruined [his and his wife's] day whenever they called."  Tr. at 17:18-19:3 (Treinen, S. Obenauf)("The phone calls would come in and he would have to get up and check the caller ID, and these calls in particular upset him because the numbers the numbers on the caller ID were spoofed.").[2]

18.     Most of the debt collectors immediately complied with R. Obenauf's requests to stop calling.  A few did not.  See Tr. at 10:7-9 (Treinen, R. Obenauf).

19.     R. Obenauf obtained counsel and began filing lawsuits against the collection companies that continued calling him after he requested that they stop.  See Obenauf v. CardWorks Servicing LLC, No. CIV 10-1004 (D.N.M.); Obenauf v. Enhanced

_____

    [2] The "spoofed" telephone calls -- where the caller's true telephone number was not displayed on the Obenauf's caller identification apparatus -- were the August 2010 calls.  See Tr. at 8:10-14.

Recovery Corporation, No. CIV 10-1179 (D.N.M.); Obenauf v. Northland Group, Inc., No. CIV 11-0083 (D.N.M.).

20.     R. Obenauf's counsel incurred $4,883.25 in attorney's fees and costs prosecuting this case.  See Tr. at 18:17-21; Declaration of Rob Treinen (dated April 12, 2011), Plaintiff's Ex. 6.

21.     FFG is not licensed to collect debts in New Mexico.  See Complaint ¶ 4, at 1-2.  A search conducted under the New Mexico Financial Institutions Division ("NMFID") official website -- under the title "licensee search" accessed through http://www.fid.state.nm.us/fed/ -- indicates that FFG is not licensed in New Mexico.

**PROCEDURAL BACKGROUND**

On January 25, 2011, R. Obenauf filed his Complaint for Damages and Injunctive Relief. See Doc. 1 ("Complaint").  R. Obenauf alleges that FFG's actions violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 to 1692p ("FDCPA"), the New Mexico Unfair Practices Act, NMSA 1978, §§ 57–12–1 through 57–12–26 ("NMUPA"), and the New Mexico common law against tortious debt collection. On February 3, 2011, R. Obenauf personally served FFG, delivering a summons and a copy of the Complaint to Paula Engelbrecht, Director of Finance and Administration, who is lawfully designated as FFG's agent to receive service, at 1291 Galleria Dr., Ste 125 in Henderson, Nevada 89014.

FFG did not respond to the summons.  On March 7, 2011, the Clerk of the United States District Court for the District of New Mexico filed his Entry of Default.  See Doc. 10.  That same day, R. Obenauf filed his Motion for Entry of Default Judgment, see Doc. 6, and his Motion for Evidentiary Damages Hearing, see Doc. 9.  On March 14, 2010, the Court granted both motions.

See Entry of Default and Order Setting Hearing, filed March 14, 2010 (Doc. 11).

At the April 13, 2011 hearing, the Obenauf agreed that the Court could attempt to contact FFG to see if it wished to attend the hearing telephonically.  Obenauf provided four telephone numbers for FFG.  The Court called the first number, 915-317-1181, which connected to a customer service representative.  Upon being told of the nature of the Court's call, the customer service representative asked to place the Court on hold to transfer the call to the corporate office, and the Court was then disconnected.

The Court next attempted to contact FFG at 915-317-1175.  A woman named Susan answered and confirmed the Court had reached FFG's Nevada corporate office.  The Court again stated the nature of its call.  The Court was transferred to Anthony Amadeo, who stated that he is the director of collections.  Amadeo said he had received no notice or correspondence regarding the hearing.  After placing the Court on hold, Amadeo returned to the line and stated that his general manager, whom he did not name, informed Amadeo that FFG would not appear at the hearing telephonically and stated that anything that occurred could be sent to them by mail.  The Court told Amadeo that it would leave it telephone conference line open in the event FFG decided to attend, and provided him with the telephone number of the telephone conference line.  The Court left the line open during the hearing, but FFG did not appear.  During the course of the hearing, the Court also attempted to call FFG at 866-443-6985 and 877-683-5490, and again reached FFG's Nevada corporate office, and ultimately spoke with the same individuals as in the second telephone call.  The individuals became frustrated with the Court attempts to contact FFG and hung up.

R. Obenauf asserted that the Court has previously awarded amounts between $10,000.00 and $20,000.00 for violations of FDCPA.  See Brief at 16.  R. Obenauf asks for a more modest award,

in the range of $5,000.00 to $10,000.00, "in recognition that Mr. Obenauf was distressed but it probably wasn't quite as severe as in some of those other cases." Tr. at 21:1-5. R. Obenauf also requests $1,000.00 in statutory damages, and an order "enjoining FFG from attempting to collect any debts via a telephone call placed to the 505 or 575 area codes or via a letter sent to any address in New Mexico without first obtaining a license as a debt collection agency with New Mexico Financial Institutions Division." Brief at 23.

## ANALYSIS

The Court awards R. Obenauf $150.00 for emotional distress, $11.08 in compensatory damages, $300.00 in statutory damages, and enjoins FFG from contacting R. Obenauf via telephone or otherwise causing his telephone to ring. The Court also awards R. Obenauf his reasonable attorney's fees of $2,500.00. After entering default judgment, the Court takes all of the well-pleaded facts in a complaint as true. See United States v. Craighead, 176 F. App'x 922, 925 (10th Cir. 2006); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." (citations omitted)). "If defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing." United States v. Craighead, 176 F. App'x at 925 (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2688 (3d ed. 1998))(alteration in original). See also Fed. R. Civ. P. 8(d)("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."). A court may enter a default judgment for a damage award

-8-

without a hearing if the amount claimed is "one capable of mathematical calculation." <u>Applied Capital, Inc. v. Gibson</u>, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007)(Browning, J.)(quoting <u>H.B. Hunt v. Inter-Globe Energy, Inc.</u>, 770 F.2d 145, 148 (10th Cir. 1985)(citing <u>Venable v. Haislip</u>, 721 F.2d 297, 300 (10th Cir. 1983))).   "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."   10A C. Wright, A. Miller & M. Kane, <u>supra</u>, § 2688 (quoting <u>Pope v. United States</u>, 323 U.S. 1, 12 (1944)).   "If the damages sum is not certain or capable of easy computation, the court may" conduct such hearings or order such references as it deems necessary.   <u>Applied Capital, Inc. v. Gibson</u>, 558 F. Supp. 2d at 1202 (citing <u>Beck v. Atlantic Contracting Co.</u>, 157 F.R.D. 61, 64 (D. Kan. 1994)).   <u>See</u> Fed. R. Civ. P. 55(b)(2)(B)("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages.").

The Court has entered Default Judgment as to liability against FFG.   "[W]hen a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages."   <u>United States v. Craighead</u>, 176 F. App'x at 924-25 (quoting <u>American Red Cross v. Community Blood Center Of The Ozarks</u>, 257 F.3d 859, 864 (8th Cir. 2001)).   In <u>United States v. Craighead</u>, the United States Court of Appeals for the Tenth Circuit addressed a defendant's argument that a district court had improperly entered default judgment against him, because the court did not have subject-matter jurisdiction and because "the record contains only the theories and conclusions of counsel purporting to represent the United States -- no notes and no authenticated documents."   176 F. App'x at 924. The Tenth Circuit rejected the defendant's argument, stating:

The fatal flaw in Mr. Craighead's argument is that it rests on the faulty premise that the district court could not enter default judgment unless the government proved the factual allegations contained in its complaint.   On the contrary, Mr. Craighead relieved the government of the burden of proving its factual allegations, including the allegations supporting constitutional standing, by failing to answer the complaint. "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); see also Olcott v. Delaware Flood Co., 327 F.3d 1115, 1125 (10th Cir. 2003) (quoting Jackson v. FIE Corp., 302 F.3d 515, 525 (5th Cir. 2002), for the same proposition); Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002) (quoting Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987), for the same proposition).

176 F. App'x at 924-25 (emphasis added).

The Court must determine, taking the factual allegations in R. Obenauf's Compliant as true -- with liability established by virtue of default judgment -- and in light of the testimony R. Obenauf presented at the hearing, whether R. Obenauf is entitled to the damages he seeks.  See Klapprott v. United States, 335 U.S. 601, 612 (1949)("[D]efault judgments for money damages where there is any uncertainty as to the amount must ordinarily be supported by actual proof.") Rainey v. Diamond State Port Corp., 354 F. App'x 722, 723 (3d Cir. 2009)(per curiam)(affirming a district court's entry of nominal damages where default judgment was the only basis of liability for the plaintiff's Title VII claim); Beavers v. Brown, 95 F. App'x 529, 530 (5th Cir. 2004)(affirming award of nominal damages for § 1983 claims where liability was based only on default judgment); Lothschuetz v. Carpenter, 898 F.2d 1200, 1205 & n.4 (6th Cir. 1990)(affirming award of nominal damages to compensate each libel plaintiff where "liability was established by the district court's entry of a default judgment").

While punitive damages are recoverable, it is evident that their amount cannot be fixed without an evidentiary hearing.  An award of punitive damages is not a matter of right but is within the discretion of the trier of the facts and will depend upon the degree of wanton and willful conduct of the defendant.  Globus v. Law Research

-10-

Serv., Inc., 287 F. Supp. 188, 192 (S.D.N.Y. 1968), aff'd in part and rev'd in part, 418 F.2d 1276 (2d Cir. 1969), cert. denied, 397 U.S. 913 . . . (1970). But here, there has been no trial of the facts and therefore no basis for determining how egregious or opprobrious that conduct has been. While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation. Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 . . . (1973); Davis v. National Mortgage Corp., 320 F.2d 90, 91-92 (2d Cir. 1963); 6 J. Moore, Federal Practice P55.07 (2d ed. 1974) and cases cited. See also Fed. R. Civ. P. 8(d). Punitive damages are clearly not liquidated or computable and there is no basis at all here to award the amount set forth in the complaint. See Bass v. Hoagland, 172 F.2d 205, 209 (5th Cir.), cert. denied, 338 U.S. 816 . . . (1949).

Flaks v. Koegel, 504 F.2d at 707.

In Rainey v. Diamond State Port Corp., the United States Court of Appeals for the Third

Circuit explained:

When a plaintiff prevails by default, he or she is not automatically entitled to the damages they originally demanded. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). Rather, defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to the damages sought. Id.; DIRECTV Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005). The damages Rainey sought could not be determined with exactness on the cause of action by a simple mathematical calculation or by application of definitive rules of law. "If it is necessary to determine the amount of damages or to establish the truth of any averment by evidence, the court may conduct a hearing." Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994) (quoting Fed. R. Civ. P. 55(b)(2)) (emphasis added) (internal quotation marks omitted).

354 F. App'x at 725. Accordingly, the Third Circuit considered whether the evidence before the

Court established that the plaintiff was entitled to damages:

For the reasons that follow, we do not believe Rainey has shown an abuse of discretion in the District Court's decision to award only nominal damages in the absence of a hearing.

To win damages in an employment discrimination case, a plaintiff must prove membership in a protected class and that he or she was terminated on account of membership in that protected class rather than for legitimate nondiscriminatory reasons. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 . . . (1973). To do

so, a plaintiff can produce direct evidence of his or her employers' illegal motives or show that similarly situated employees who were not members of the protected class were treated more favorably.  Id.

Typically, once a plaintiff makes a prima facie case, the burden shifts to the defendant to establish a nondiscriminatory reason for taking the adverse employment action. If the defendant can do so, the burden shifts back to the plaintiff to show that the defendant's justifications were mere pretext.  This burden shifting cannot occur when a plaintiff prevails by default because the defendant declines to participate in the litigation, as is the case here.  Appropriately, given the circumstances, the District Court looked to whether Rainey made out a prima facie case.

To determine if Rainey has met his burden we review the evidence that was before the District Court.  Rainey's evidence showed that he was involved in two fights at work during the year prior to his termination, and that he was deemed the aggressor in each incident.  Although he disputes that he was in fact the aggressor, he did not offer any evidence of similarly situated white or female employees who had kept their jobs, despite being deemed the aggressors in multiple physical altercations on the job.  Nor did he offer any evidence that defendant deemed him the aggressor because he was a member of a protected class or that he was fired for a discriminatory purpose.

354 F. App'x at 724-25.  See Beavers v. Brown, 95 F. App'x at 530 ("Beavers has pointed to no evidence overlooked by the district court in determining she had not suffered a compensable injury; therefore, she has not shown that the nominal damages award was clearly erroneous." (citing Texas A & M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 404 (5th Cir. 2003); Williams v. Kaufman County, 352 F.3d 994, 1014 (5th Cir. 2003))).

Similarly, in approving an award of nominal damages after entry of default judgment, the Sixth Circuit in Lothschuetz v. Carpenter rejected the plaintiffs' argument that default judgment alone established that they were entitled to a punitive award:

All three plaintiffs object to the district court's denial of punitive damages. . . .  The plaintiffs contend that the district court's entry of a default judgment as to liability resulted in the conclusive establishment of actual malice as alleged in the plaintiffs' complaint.  We find this reliance upon the bare allegations in the complaint unpersuasive.  A default judgment . . . "is only conclusive as to liability and does not constitute an admission as to damages."  Meehan v. Snow, 494 F. Supp. 690, 698

(S.D.N.Y. 1980), rev'd on other grounds, 652 F.2d 274 (2d Cir.1981).

898 F.2d at 1205.  The Sixth Circuit considered whether the record supported an award of punitive

damages, rejecting the "plaintiffs['] further conten[tion] that the record conclusively displays the

defendants' actual malice, thereby entitling each plaintiff to punitive damages."  898 F.2d at 1205.

Noting that actual malice required that "[t]here must be sufficient evidence to permit the conclusion

that the defendant entertained serious doubts as to the truth of his publication," the Sixth Circuit

stated that "the record clearly indicates that Carpenter merely reasoned (albeit erroneously) that

UTI's hiring of Lothschuetz and Hill after their tenures with the FCC was impermissible."  898 F.2d

at 1205.

A review of the allegations in R. Obenauf Complaint demonstrates that liability in this case

is based on the court's entry of default judgment.  The Court concludes that R. Obenauf is entitled

to $150.00 for emotional distress.[3]  R. Obenauf is also entitled to $11.08 in compensation for

postage, and $300.00 in statutory damages under the NMUPA.  The Court enjoins FFG from making

R. Obenauf's telephone ring, and awards R. Obenauf reasonable Attorney's fees of $2,500.00.

_____

[3] While R. Obenauf did not testify about his income as a university lecturer in a Ph.D. program, the Court estimates that his time is worth approximately $15.00 per hour.  He is working in higher education, and he has not completed his doctorate.  He is working in the humanities. Based on this, the Court estimates his time to be worth approximately $30,000.00 per year, or roughly $15.00 per hour.  R. Obenauf testified that he lost an afternoon because of his frustration after the August 27, 2010 telephone calls.  The Court credits him for five hours at its estimated rate, or $75.00.  He also discovered three other calls on his caller identification apparatus, which the Court finds would cause him less stress, and credits him an hour's worth of emotional damages for each, for another $45.00.  He also placed calls to FFG in his investigation, which the Court credits for another two hours, or $30.00.  In sum, the Court finds he suffered $150.00 in emotional distress.

## I.      THE COURT AWARDS R. OBENAUF $150.00 FOR EMOTIONAL DISTRESS FOR FFG'S VIOLATION OF THE FDCPA.

Taking as true the factual allegations in the Complaint, in combination with the testimony presented at the hearing, R. Obenauf has established that he is entitled to $150.00 for emotional distress damages for FFG's violation of the FDCPA.  Section 1692k establishes civil liability for violations of the FDCPA, and instructs the Court what factors to consider when determining the amount to award a plaintiff:

(a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of --

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

. . . .  and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.  On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) Factors considered by court

In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors --

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; . . . .

15 U.S.C. § 1692k.

Accordingly, the Court must consider the "nature" of FFG's noncompliance with the FDCPA, including the "extent," "frequency[,] and persistence" of FFG's noncompliance.  In his Complaint, R. Obenauf alleges that FFG called him twice, once on December 20, 2010, and once on December 27, 2010.  See Complaint ¶¶ 10, 15, at 2, 3.  The second call occurred four days after FFG received R. Obenauf's letter asking it to stop making his telephone ring.  At the hearing, R. Obenauf presented evidence that FFG called him three other times, twice on August 27, 2010, and another time in December.  The allegations in R. Obenauf's Complaint reveal that FFG's liability is based on the Court's entry of default judgment.  "[D]efault judgment constitutes an admission of liability."  Flaks v. Koegel, 504 F.2d at 707.  Because FFG's"liability [i]s established by the [Court's] entry of a default judgment," Lothschuetz v. Carpenter, 898 F.2d at 1205 & n.4, the Court awards R. Obenauf $150.00 for the emotional distress he suffered from FFG's FDCPA violation, which made him "fe[el] violated," Tr at 14:5-15:4 (R. Obenauf), and "[j]ust pretty much ruined [his and his wife's] day whenever [FFG] called,"  Tr. at 17:18-19:3 (S. Obenauf).  See Rainey v. Diamond State Port Corp., 354 F. App'x at 723.  Because FFG's liability is based on a single telephone call in the middle of the day, the Court awards no statutory fees.  See 15 U.S.C. § 1692k(a)(2)(A)("[I]n the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . . ."); Graziano v. Harrison, 950 F.2d 107, 114 (3d Cir. 1991)("Cases interpreting this section have made clear that in the instance of a single, trivial, and unintentional violation of the Act, it is within the court's discretion to decline to award statutory damages at all."  (citing Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir. 1989); Emanuel v. Am. Credit Exchange, 870 F.2d 805, 809 (2d Cir. 1989)).  The Court awards reasonable attorney's fees of $2,500.00.

-15-

**A.    THE COURT WILL NOT AWARD DAMAGES OR PROVIDE INJUNCTIVE RELIEF ON THE BASIS OF FFG NOT REGISTERING WITH NMFID.**

R. Obenauf contends that, because of the nature of FFG's violations of the FDCPA, "more than nominal damages are appropriate here."  Brief at 16.  The FDCPA directs the Court to consider the "nature of [FFG's] noncompliance," including the "extent," "frequency and persistence of noncompliance by the debt collector" when it "determin[es] the amount of liability."  15 U.S.C. § 1692k.  The Court therefore begins by considering the nature of FFG's violations of the FDCPA. "Mr. Obenauf's FDCPA claim is brought under two sections of the FDCPA."  Brief at 3.  He first contends that FFG violated the FDCPA "by collecting without first obtaining the required license." Brief at 3-4; id. at 7 ("Because FFG operates as a rogue debt collector -- refusing to be licensed or regulated and continuing to call after notice that it was calling the wrong person -- a damage award is merited.").  The Court will not award damages -- or injunctive relief under the NMUPA -- based on FFG not registering with NMFID.  R. Obenauf contends that "FFG is required to be licensed with and regulated by FID."  Brief at 1 (citing NMSA 1978 § 61-18A-5).  The New Mexico Collection Agency Regulatory Act, N.M.S.A. 1978, §§ 61-18A-1 to 61-18A-33 ("CARA"), requires entities engaged in debt collection activity in New Mexico to be licensed with NMFID.  See N.M.S.A. 1978, § 61-18A-5.  "[C]onducting business as a collection agency . . . without first having been licensed pursuant to" CARA is a felony.  N.M.S.A. 1978, § 61-18A-6A.

In his brief, R. Obenauf asserts that FFG's alleged violation of CARA amounts to a violation of "§ 1692e -- the general prohibition against the use of 'false, deceptive or misleading representations or means in connection with the collection of any debt' -- and . . . § 1692e(5), the prohibition against taking illegal actions."  Brief at 4.  Other courts have held that violations of state licensing laws can amount to violations of the FDCPA.  See LeBlanc v. Unifund CCR Partners, 601

F.3d 1185, 1192 (11th Cir. 2010)("We therefore hold that a violation of the [state collection agency act] for failure to register may, in fact, support a federal cause of action under Section 1692e(5) of the FDCPA for threatening to take an action it could not legally take."); Sibley v. Firstcollect, Inc., 913 F. Supp. 469, 471-72 (M.D. La. 1995)("[I]t is undisputed that the letters and other communications were an attempt to act as a debt collector in Louisiana without the required license[,] . . .threatening to take an action that it could not legally take . . . .  Hence, it violated Section 1692e(5) of the FDCPA."); Russey v. Rankin, 911 F. Supp. 1449, 1459 (D.N.M. 1995)("[T]his district has held that collection activity which violates state law violates the FDCPA. Therefore, the Court finds that Defendant TCA violated [the FDCPA] by engaging in collection activity in this state without a license, and Plaintiff will be granted Summary Judgment on these claims."  (citations omitted)); Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1452 (D. Nev. 1994)("[T]he Court finds that ACT's unlicensed collection actions . . . constituted a violation of § 1692e(5) in that they threatened to take action that legally could not be taken."  (citations omitted)); Gaetano v. Payco of Wis., Inc., 774 F. Supp. 1404, 1415 n.8 (D. Conn. 1990)("[T]he Court holds that the defendant's unlicensed actions as a collection agency in the state of Connecticut constituted an 'unfair or unconscionable' method of debt collection in violation of § 1692f.").

R. Obenauf has not shown, however, that FFG is violating CARA by virtue of not being registered with NMFID.  N.M.S.A. 1978, § 61-18A-5 provides:

> A. No person shall conduct within this state a collection agency, act as a collection agency manager or engage within the state in the business of collecting claims for others or of soliciting the right to collect or receive payment from another of any claim or advertise or solicit either in print, by letter, in person or otherwise, the right to collect or receive payment for another of any claim or seek to make collection or obtain payment of any claim on behalf of another without having first applied for and obtained the licenses required by the Collection Agency Regulatory Act.

B. No person shall conduct within this state the business of a repossessor without having first applied for and obtained a repossessor's license.

C. No person shall be considered to be engaged in collection activity within this state if that person's activities regarding this state are limited to collecting debts not incurred in New Mexico from debtors located in this state by means of interstate communications, including telephone, mail or facsimile transmission, from the person's location in another state.

N.M.S.A. 1978, § 61-18A-5 (emphasis added).  Obenauf has presented no evidence that FFG, who is attempting to "collect[ ] from debtors located in this state by . . . telephone . . . from [FFG's] location in another state," is not attempting to collect "debts not incurred in New Mexico." N.M.S.A. 1978, § 61-18A-5C.  If the "debts [were] not incurred in New Mexico," then FFG is not "engaged in collection activity within this state" for the purposes of CARA.  N.M.S.A. 1978, § 61-18A-5C.  Moreover, while the Court takes as true R. Obenauf's allegations in his Complaint, his Complaint contains no allegations that the debts FFG seeks to collect were incurred in New Mexico.  The only allegation the Complaint contains about the nature of the debt is that, "[u]pon information and belief, this account was obtained for personal, family or household purposes." Complaint ¶ 6, at 2.  See 15 U.S.C. § 1692a ("The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the . . . subject of the transaction are primarily for personal, family, or household purposes . . . .").  R. Obenauf provides no allegations about where the debt was incurred.  The only information in the record about Neugebauer is that he was assigned a New Mexico phone number at some point.  This is insufficient to create a presumption that Neugebauer's debt was incurred in New Mexico, because such a presumption would swallow N.M.S.A. 1978, § 61-18A-5C's exception.  Because R. Obenauf has not established that FFG's telephone calls to New Mexico violate CARA, the Court will not award damages on this basis.

**B.      FFG'S CALLS WERE NOT OPPRESSIVE, ABUSIVE, OR HARASSING.**

The second basis on which R. Obenauf contends that "more than nominal damages are appropriate here," Brief at 16, is that FFG "broke the law by continuing in its contact with Mr. Obenauf after he informed it that the person FFG was looking for was not him."  Brief at 1.  R. Obenauf contends that FFG's call to him after it received his Letter violated 15 U.S.C. § 1692d's prohibition on harassing, oppressive, or abusive practices.  Taking the allegations in the Complaint as true, the Court concludes that R. Obenauf has not established a compensable violation of 15 U.S.C. § 1692d.

"Congress enacted the FDCPA to eliminate 'abusive practices in the debt collection industry, and . . . to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 134 (2d Cir. 2010)(quoting 15 U.S.C. § 1692(e); Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008)).  The FDCPA was enacted in part "to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'"  Ellis v. Solomon and Solomon, P.C., 591 F.3d at 134 (quoting S. Rep. No. 95-382, at 4 (1977)).  See Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997)("These provisions are intended for the case in which the debt collector, being a hireling of the creditor rather than the creditor itself, may lack first-hand knowledge of the debt.").

"The Act focuses on regulating interactions between 'debt collectors' and 'consumers.'" Ellis v. Solomon and Solomon, P.C., 591 F.3d at 134.  The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).  R. Obenauf acknowledges that he is not a consumer -- which he terms a "debtor" -- within the meaning of the

FDCPA.  See Brief at 3 ("Although some of the prohibitions contained in the FDCPA apply only

to conduct aimed at debtors, other sections provide standing to anyone contacted by debt

collectors.").  R. Obenauf cites § 1692c as an example of a section that applies to only consumers.

That section provides: "If a consumer notifies a debt collector in writing that the consumer refuses

to pay a debt or that the consumer wishes the debt collector to cease further communication with the

consumer, the debt collector shall not communicate further with the consumer with respect to such

debt . . . ."  15 U.S.C. § 1692c (emphasis added).  See Montgomery v. Huntington Bank, 346 F.3d

693, 696-97 (6th Cir. 2003)(holding that § 1692c applies to "consumers," making it more limited

than other portions of the FDCPA which apply to "any person"); Kaniewski v. Nat'l Action Fin.

Servs., 678 F. Supp. 2d 541, 545 (E.D. Mich. 2009)(holding that a person who is not a consumer

under the FDCPA has no standing to bring a claim under 15 U.S.C. § 1692c).  R. Obenauf notes,

however, that a number of the FDCPA's sections are not limited to consumers, including § 1692d,

which provides that "[a] debt collector may not . . . harass, oppress, or abuse any person in

connection with the collection of a debt," 15 U.S.C. § 1692d (emphasis added), and § 1692k, which

provides that "any debt collector who fails to comply with any provision of this subchapter with

respect to any person is liable to such person," 15 U.S.C. § 1692k (emphasis added).

     R. Obenauf argues that,

> by calling Mr. Obenauf after he informed FFG that he was not the debtor[,] FFG
> violated § 1692d -- the general prohibition against "any conduct the natural
> consequence of which is to harass, oppress, or abuse any person in connection with
> the collection of a debt' -- and violated § 1692d(5), by which Congress forbade
> '[c]ausing a telephone to ring or engaging any person in telephone conversation
> repeatedly or continuously with intent to annoy, abuse, or harass any person at the
> called number."

Brief at 4-5.  Section 1692d, which prohibits debt collectors from engaging in harassment,

oppression, and abuse, provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>>
>> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>>
>> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>>
>> (4) The advertisement for sale of any debt to coerce payment of the debt.
>>
>> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>>
>> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d (emphasis added).

In considering consider the "nature of [FFG's] noncompliance," to "determin[e] the amount of liability," 15 U.S.C. § 1692k, and taking as true the R. Obenauf's factual allegations in his Complaint, see United States v. Craighead, 176 F. App'x at 925, the Court finds little for support awarding more than nominal damages, because it does not believe that the "natural consequence" of FFG's telephone calls "is to harass, oppress, or abuse" R. Obenauf.  FFG contacted R. Obenauf twice on August 27, 2010, and three more times on different days in December 2010.  See Tr. at 8:10-18, 10:19-24, 11:7-12 (Treinen, R. Obenauf).  It is unclear how calling the telephone number of record for a debtor five times in five months amounts to "[c]ausing a telephone to

ring . . . repeatedly or continuously." 15 U.S.C. § 1692d(5). In <u>Katz v. Capital One</u>, No.

1:09CV1059(LMB/TRJ), 2010 WL 1039850 (E.D. Va. March 18, 2010), the United States District

Court for the Eastern District of Virginia, based on reasoning the Court finds persuasive, granted

summary judgment on a plaintiff's § 1692d claim. The Court stated:

> The FDCPA also prohibits debt collectors from engaging in harassing conduct, which the statute delineates in relevant part as "causing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d. The plaintiff characterizes Allied's phone calls as "willful; [sic] malicious, harassing; [sic] vengeful." However, nothing in the record indicates that the phone calls were intended to be annoying, abusive, or harassing. Instead, the record shows that Allied, believing plaintiff's debt to be valid, attempted to take steps to collect that debt. Moreover, the record reflects that Allied placed no more than two calls to plaintiff in a single day. Although the case law defining what amounts to "causing a telephone to ring . . . repeatedly or continuously" is sparse, most courts addressing the issue have found that "it turns not only on the volume of calls made, but also on the pattern of calls." <u>Akalwadi v. Risk Management Alternatives, Inc.</u>, 336 F. Supp. 2d 492 (D. Md. 2004); <u>see also</u> <u>Gilroy v. Ameriquest Mortg. Co.</u>, 632 F. Supp. 2d 132, 136-37 (D.N.H. 2009)(finding a violation of § 1692d where calls were being placed between 8:00pm and 9:00pm and the consumer had asked defendants to stop calling); <u>Sanchez v. Client Services, Inc.</u>, 520 F. Supp. 2d 1149, 1161 (N.D. Cal. 2007)(holding that the number and frequency of calls can show there was an intent to annoy consumer); <u>Chiverton v. Federal Financial Group, Inc.</u>, 399 F. Supp. 2d 96 (D. Conn. 2005)(finding that repeated calls after the consumer had asked debt collector to stop calling amounted to harassment); <u>Kuhn v. Account Control Tech.</u>, 865 F. Supp. 1443, 1453 (D. Nev. 1994)(finding that defendant who made six calls to consumer in twenty-four minutes violated § 1692d). The evidence shows that none of Allied's calls were made back-to-back, at inconvenient times, after plaintiff had asked Allied to stop calling, or immediately after plaintiff hung up. Allied called plaintiff twice in a single day, within a three-hour time span on one occasion and within a four hour time span on another occasion. Without any indicia of an unacceptable pattern of calls, this does not constitute harassment. <u>See</u> <u>Saltzman v. I.C. System, Inc.</u>, 2009 WL 3190359 (E.D. Mich. 2009)(finding that "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor if this effort is unaccompanied by any oppressive conduct."); <u>Udell v. Kansas Counselors, Inc.</u>, 313 F. Supp.2d 1135, 1143 (D. Kan. 2004)(holding that four calls over seven days by a debt collector without leaving a message does not violate § 1692d). Therefore, the Court finds there was no violation of § 1692d and summary judgment will be granted to the defendant on this claim.

2010 WL 1039850, at *3.  The same reasoning leads the Court to conclude that, while lisy is established by virtue of default judgment in this case, five calls in as many months does not establish an egregious violation of § 1692d.  R. Obenauf presents evidence that FFG's calls on August 27th, 2010 were at 3:14 p.m. and 5:32 p.m.  R. Obenauf also presents evidence that the December 27, 2010 call was at 12:42 p.m.  R. Obenauf does not present evidence that the calls were made "were made back-to-back, at inconvenient times" or that there were other "indicia of an unacceptable pattern of calls."  2010 WL 1039850, at *3.  So few calls would not seem particularly oppressive, burdensome, or harassing -- especially in comparison to cases outside of the default judgment context where courts find viable claims under § 1692d(5).  See, e.g., Meadows v. Franklin Collection Serv., Inc., No. 10-13474, 2011 WL 479997, at *2 (11th Cir. Feb. 11, 2011)(reversing a district court's grant of summary judgment for a debt collector where a plaintiff "received approximately 300 calls over a two and a half year period regarding debts she did not owe and people she did not know . . . .  up to three calls a day"); Brown v. Hosto & Buchan, PLLC, 748 F. Supp. 2d 847, 852-53 (W.D. Tenn. 2010)(denying a motion to dismiss where the plaintiff alleged the collector called "seventeen times in one month"); Bassett v. I.C. Sys., Inc., 715 F. Supp. 2d 803, 810 (N.D. Ill. 2010)(denying summary judgment for a defendant who called "thirty-one times over a twelve day period"); Jeter v. Alliance One Receivables Mgmt., Inc., NO. 10-2024-JWL, 2010 WL 2025213, at *5 (D. Kan. May 20, 2010)("Plaintiff has linked his claims under Section 1692d and subsection 1692d(5) to his factual allegation that defendant continually called him after he had repeatedly advised it that he was not the debtor that it was seeking."  (emphasis added)); Valentine v. Brock & Scott, PLLC, No. 2:09–CV–2555–PMD, 2010 WL 1727681, at *4 (D.S.C. Apr. 26, 2010)(denying a motion to dismiss where the plaintiff alleged that the defendant called her eleven

times over a period of nineteen days, with two calls occurring on the same day); Langdon v. Credit Mgmt., LP, No. C 09–3286, 2010 WL 3341860, at *2-4 (N.D. Cal. Feb. 24, 2010)(finding that a plaintiff's allegations that defendant often placed two or more collection calls per day stated a plausible claim under § 1692d and denying defendant's motion to dismiss); Bank v. Pentagroup Fin., LLC, No. 08-CV-5293,  2009 WL 1606420, at *1 (E.D.N.Y. June 09, 2009)(denying motion to dismiss § 1692d claim where defendant called plaintiff thrity times "during 2008"); Chiverton v. Fed. Fin. Grp., Inc., 399 F. Supp. 2d 96, 104 (D. Conn. 2005)(finding a violation of § 1692d where the defendant telephoned the plaintiff at least twenty times over three months, including three times in succession in one day, after the plaintiff directed the defendant to stop calling); Akalwadi v. Risk Mgmt. Alts., Inc., 336 F. Supp. 2d 492, 505-06 (D. Md. 2004)(finding that, where the plaintiff alleged that the defendant called the plaintiff twenty-eight times during an approximately two-month period, including periods in which defendant called plaintiff on a daily basis and three times within five hours, "[t]he reasonableness of this volume of calls and their pattern is a question of fact for the jury").  While liability is established by default judgment, the Court cannot say that FFG's five calls in five months attempting to contact Neugebauer, the prior owner of Romero's telephone number, were an egregious violation, which were "repeated[ ] or continuous[ ] with intent to annoy, abuse, or harass," 15 U.S.C. § 1692d, nor they frequent and persistent.  See 15 U.S.C. § 1692k(b)("In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors . . . , the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional.").

Nor does FFG's one telephone call to R. Obenauf one time shortly after receiving his Letter

requesting that it not make his telephone ring indicate an "intent to annoy, abuse, or harass." 15 U.S.C. § 1692d(5). FFG appears to have been pursuing a debt Neugebauer owed. After FFG received the letter on December 23, 2010, it called one more time on December 27, 2010 at 12:42 p.m., from 915-317-1181. See Tr. at 13:7-17 (Treinen, R. Obenauf). The December 27, 2010 call occurred approximately four days after FFG received Romero's Letter, likely before FFG had time to process his request. R. Obenauf presents no evidence the FFG contacted him after December 27, 2010. The Court concludes that this single call does not amount to a violation of § 1692d that deserves considerable compensation. See Kerr v. Dubowsky, 71 F. App'x 656, 657 (9th Cir. 2003)(holding that "the district court properly dismissed Kerr's 15 U.S.C. § 1692d claim because his complaint alleged that Dubowsky's May 2001 call was 'unwanted' but failed to allege facts that it was intended to 'harass, oppress, or abuse'"). Cf. Meadows v. Franklin Collection Service, Inc., 2011 WL 479997, at *2 (reversing a district court's grant of summary judgment for a debt collector who "continued to call [the plaintiff] until March 2009 despite being informed in May 2006 that the debts were not her own and that the debtors did not live with her").

It is noteworthy that § 1692c, which R. Obenauf concedes applies to only consumers, may impose liability for a single call after the consumer requested the collection company to stop calling. See Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117 (D. Nev. 2008)(denying summary judgment for debt collector that called a plaintiff three times, twice after receiving a stop-request from the plaintiff, because "there [wa]s an genuine issue as to whether RAC violated 15 U.S.C. § 1692c(c) by phoning the Kerwins after receiving written notice that the Kerwins wished RAC to cease further communication"). Section 1692c(c) provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication

with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except --

> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c).  R. Obenauf acknowledges that this provision does not apply to him.  See Brief at 3.  Congress limited § 1692c(c) to consumers.  See Montgomery v. Huntington Bank, 346 F.3d at 696-97 (holding that only consumers have standing under § 1692c); Kaniewski v. Nat'l Action Fin. Servs., 678 F. Supp. 2d at 545 (same).  Moreover, Congress did not include a single unwanted call after a stop-request in § 1692d's enumerated forms of harassment and abuse; rather, it requires "repeated[ ] or continuous[ ]" conduct "with intent to annoy, abuse, or harass."  The Court would do violence to Congress' intent if it were to expand § 1692c(c)'s prohibition from "consumers" to "all persons" by interpreting § 1692d to prohibit the same, and read "[c]ausing a telephone to ring . . . repeatedly or continuously" to mean making a telephone ring once after receiving a request to stop.[4]  The Court therefore concludes that, taking the factual allegations in the

---

[4] Congress provided protections to non-debtors through another provision of the FDCPA.  As the United States Court of Appeals for the Second Circuit explained in Ellis v. Solomon and Solomon, P.C.:

> FDCPA § 1692g, "Validation of debts," was enacted to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to

Complaint as true, R. Obenauf has not established a violation of 15 U.S.C. § 1692d that warrants

much compensation.

### C.      THE COURT AWARDS R. OBENAUF REASONABLE ATTORNEY'S FEES.

The Court will award R. Obenauf reasonable attorney's fees.  R. Obenauf contends that he

is entitled to an award of costs and attorney fees under the FDCPA.  The Court must address what

---

collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1659, 1699; see also Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997) ("These provisions are intended for the case in which the debt collector, being a hireling of the creditor rather than the creditor itself, may lack first-hand knowledge of the debt.").  Unless set forth in the debt collector's "initial communication" with the consumer, the debt collector must send the consumer a written "validation notice" within five days of the initial communication.  The validation notice must contain:

> (1) the amount of the debt;

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 1692g(a).

591 F.3d at 134.  R. Obenauf does not contend that FFG violated this provision, presumably because he has no knowledge of the circumstances surrounding FFG's initial contacts with Neugebauer.

attorney's fees are reasonable in light of R. Obenauf's modest success in this case.  The Supreme Court of the United States has admonished that a "request for attorneys' fees should not result in a second major litigation."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  Nevertheless, the Tenth Circuit requires a sufficient factual record to support a claim for attorneys' fees and expenses.  See Clay v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1256-57 (10th Cir. 1998).

In determining appropriate attorneys' fees, courts generally begin by calculating the lodestar -- the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended.  See Hensley v. Eckerhart, 461 U.S. at 433-37; Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856 (7th Cir. 2009).  The court may then adjust that figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation.  See Farrar v. Hobby, 506 U.S. 103, 120-22 (1992)(O'Connor, J., concurring).  Because R. Obenauf prevailed on his FDCPA claim, the Court awards him attorney's fees.  The Court finds that the lodestar for Romero's attorney's fees is $4,883.25.  Given R. Obenauf's modest success -- obtaining only a fraction of the relief he sought -- the Court awards R. Obenauf $2,500.00.  See Farrar v. Hobby, 506 U.S. at 120-22; Hensley v. Eckerhart, 461 U.S. at 436–37 ("If . . . a plaintiff has achieved only partial or limited success, the [lodestar] may be an excessive amount. . . .  The district court . . . may simply reduce the award to account for the limited success.").

### 1.     The Court Calculates the Lodestar for R. Obenauf's Attorney's Fees to Be $4,883.25.

R. Obenauf requests $4,883.25 in attorney's fees.  "The setting of a reasonable hourly rate is within the district court's discretion," but should "reflect the 'prevailing market rates in the relevant community.'"  Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995)(quoting Blum v.

Stenson, 465 U.S. 886, 895 (1984)).[5]  "The district court arrive[s] at its fee award . . . through a

_____

[5] In Anchondo v. Anderson, Crenshaw & Associates, LLC, 616 F.3d 1098 (10th Cir. 2010), the Tenth Circuit rejected as "meritless" the defendant's argument that the district court erred when it did not consider the factors the United States Court of Appeals for the Fifth Circuit set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) when determining reasonable attorney's fees under the FDCPA:

> In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), the Fifth Circuit set out twelve factors relevant to the determination of a reasonable attorney fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Francia v. White, 594 F.2d 778, 784 (10th Cir. 1979) (summarizing factors in appendix to opinion).  While "not saying that all of these need be considered," this court "commend[ed] them to the trial court for its use in arriving at a fair and reasonable [fee]" in Francia, id. at 782, and we have referred to them for guidance on various occasions since.

Anchondo v. Anderson, Crenshaw & Assocs., LLC, 616 F.3d at 1102 n.3.  The Tenth Circuit held that the Supreme Court's opinion in Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662 (2010), which addressed when a fee enchantment is appropriate, defeated the defendant's argument:

> In Perdue the Court appears to significantly marginalize the twelve-factor Johnson analysis, which it discounts as just "[o]ne possible method" that "gave very little actual guidance" and, due to its "series of sometimes subjective factors[,] . . . produced disparate results." 130 S. Ct. at 1671-72 (quotation omitted). The Perdue Court clearly embraces the lodestar approach as the preferable alternative to the Johnson analysis, noting that the lodestar approach "achieved dominance in the federal courts after . . . Hensley, Gisbrecht v. Barnhart, 535 U.S. 789, 801 . . . (2002)," and has "become the guiding light of our fee-shifting jurisprudence."  130 S. Ct. at 1672 (also noting that "unlike the Johnson approach, the lodestar calculation is objective" and hence "produces reasonably predictable results") (quotations omitted).  We do not suggest that the Johnson factors have become irrelevant; Perdue did not overrule Hensley's allowance that under appropriate circumstances they may be useful in determining subsequent ad hoc adjustments to the lodestar, see Hensley, 461 U.S. at 434 & n. 9 . . . (also noting, however, "that many of [the Johnson] factors usually are [already] subsumed within

calculation of the lodestar amount pursuant to Hensley v. Eckerhart, and relevant Tenth Circuit precedent applying Hensley."  Anchondo v. Anderson, Crenshaw & Associates, LLC, 616 F.3d at 1102.  The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances."  Anchondo v. Anderson, Crenshaw & Assocs., LLC, 616 F.3d at 1102 (quoting Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. at 1673; Hensley v. Eckerhart, 461 U.S. at 433).

In Anchondo v. Anderson, Crenshaw & Associates, LLC, the Tenth Circuit affirmed the district court's finding, based on "prevailing market rates in the New Mexico community for attorneys of their experience . . . [,]" that "$195 per hour reasonable for local counsel Rob Treinen." 616 F.3d at 1102.  Mr. Treinen submits a declaration stating that he charges clients a $250.00 hourly rate and uses the same rate in contingency fee matters.  While the Court is cautious to increase twenty-percent the amount the Tenth Circuit found reasonable for Mr. Treinen to charge nine months ago, another court in this district recently approved this rate.  See Obenauf v. Enhanced Recovery Corporation, No. CIV. 10-1179, Memorandum Opinion and Order Granting Default Judgment at 11 (Doc. 14)(D.N.M. April 1, 2011).  Moreover, in Anchondo v. Anderson, Crenshaw & Associates, LLC, Mr. Treinen was a partner at the Albuquerque-based law firm of Feferman, Warren & Treinen, P.A., and he worked with a national FDCPA class action specialist.  Mr. Treinen

_____

the initial calculation of hours reasonably expended at a reasonable hourly rate"). But, after Perdue, it has only become clearer that the lodestar determination is primary and that the propriety of such a determination is not automatically called into doubt merely because the trial court did not expressly discuss the Johnson factors.

616 F.3d at 1103-04.  The Court therefore uses the lodestar approach.

has now opened his own practice, and he is the only attorney that represents R. Obenauf in this litigation.  Mr. Treinen has been practicing law since 1999.  His practice concentrates on representing consumers in lawsuits involving consumer fraud, and he has personally handled more than one-hundred lawsuits and eighteen class actions.  The Court concludes that Mr. Treinen's hourly rate of $250.00 is reasonable, given the prevailing market rates in the community for an attorney with similar experience.

The Court next considers the "number of hours reasonably expended on the litigation." Anchondo v. Anderson, Crenshaw & Assocs., LLC, 616 F.3d at 1102 (quoting Hensley v. Eckerhart, 461 U.S. at 433).  In his declaration, Mr. Treinen states that he spent 16.7 hours working on this case.  Most of that time -- 11.7 hours -- was spent on the Brief.  The twenty-four page Brief appears to be largely repurposed from R. Obenauf's other lawsuits, see Obenauf v. Enhanced Recovery Corporalion, No. CIV. 10-1179, Plaintiff's Brief on Damages (Doc. 12)(D.N.M. Mar. 21, 2011), but he added at least six pages to the motion and reworked sections to accommodate his argument the FFG violated the law because it is unlicensed.  Mr. Treinen declares that he spent less than an hour working on the four page Complaint.  He spent 1.2 hours communicating with R. Obenauf in meetings, letters, and electronic correspondence on eleven occasions.  He also spent an hour in hearings, and 1.5 hours preparing for the April 13, 2011 evidentiary hearing, and time communicating with the Court.  The Court finds that 16.7 hours is a reasonable amount of time to spend prosecuting this case through final judgment.  Mr. Treinen also advanced $416.00 for service and filing fees, totaling, with tax $4883.25.

### 2.    The *Farrar v. Hobby* framework.

Having determined the lodestar, the Court next considers whether it should adjust the award.

"[T]here is a "strong presumption" that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. at 1674. The Court finds guidance from the Supreme Court's opinion in Farrar v. Hobby. In a concurring opinion, Justice O'Connor set forth factors courts should consider when determining whether to award attorneys' fees under 42 U.S.C. § 1988. See 506 U.S. at 120-22 (O'Connor, J., concurring)(stating courts should consider: (i) the difference between the judgment recovered and the recovery sought; (ii) the significance of the legal issue on which the plaintiff prevailed; and (iii) the public purpose served by the litigation). See also Phelps v. Hamilton, 120 F.3d 1126, 1130 (10th Cir. 1987)(adopting Justice O'Connor's factors). Courts have applied Farrar v. Hobby to FDCPA cases. See, e.g., Zagorski v. Midwest Billing Servs., Inc., 128 F.3d 1164, 1166 (7th Cir. 1997)(per curiam)(stating in a FDCPA case: "On remand, the district court must determine a reasonable attorney's fee. In undertaking such a task, the methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988 will serve as a useful guide." (citations omitted)); Johnson v. Eaton, 80 F.3d 148, 152 (5th Cir. 1996)("[I]f Johnson's reading of the FDCPA was correct and she was entitled to receive a reasonable attorney's fee for her technical victory, Farrar makes it clear that a reasonable fee would be $0.00."); Carroll v. Wolpoff & Abramson, 53 F.3d 626, 629-30 (4th Cir.1995)(citing Farrar v. Hobby, and stating that in civil rights action for monetary damages, district court should consider amount of damages awarded as compared to amount sought in determining appropriate fee award); Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir.)(noting that district courts should use Farrar v. Hobby's methodology when calculating an award of attorney's fees under the FDCPA), cert. denied, 515 U.S. 1160 (1995); Graziano v.

Harrison, 950 F.2d at 114 ("[T]he court should determine what constitutes a reasonable fee [under the FDCPA] in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees.").  See also Joe v. Payco-Gen. Am. Credits, Inc., 34 F.3d 1072, at *1 (9th Cir. 1994)("Assuming without deciding that Farrar applies in FDCPA cases, we conclude that the award of attorney's fees in this case is consistent with Farrar and the FDCPA.").  Moreover, in Mares v. Credit Bureau of Raton, 801 F.2d 1197 (10th Cir. 1986), the Tenth Circuit applied the Supreme Court's holding in the § 1983 case in Hensley v. Eckerhart -- on which Justice O'Connor's concurrence in Farrar v. Hobby heavily relied -- to determine whether a district court abused its discretion when it awarded $4,261.49 of the $29,612.60 the plaintiffs requested.  See 801 F.2d at 1209-10 ("We expect counsel and district courts to observe the guidelines and respect the admonitions set out by the Supreme Court . . . .").  The Court therefore applies Justice O'Connor's concurrence in Farrar v. Hobby to determine whether to adjust the lodestar amount based on R. Obenauf's modest success.

Section 1988 of Title 42 states: "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988. "[T]here are two elements in deciding whether to award attorney's fees.  First, the party seeking fees must qualify as a 'prevailing party.'   Second, the fee itself must be 'reasonable.'"  Phelps v. Hamilton, 120 F.3d at 1129 (quoting 42 U.S.C. § 1988(b)).  In Farrar v. Hobby, the plurality held that "a plaintiff who wins nominal damages is a prevailing party under § 1988."  506 U.S. at 112. See, e.g., Koopman v. Water District No. 1, 41 F.3d 1417, 1420 (10th Cir. 1994)("It is clear that under Farrar v. Hobby, [the plaintiff] is a prevailing party because he was awarded nominal damages."), cert. denied, 516 U.S. 965 (1995).  In numerous cases, the Tenth Circuit has affirmed

that a court may determine a plaintiff who recovers nominal damages in a § 1983 case to be a prevailing party entitled to an award of attorneys' fees.  See, e.g., Nephew v. City of Aurora, 830 F.2d 1547, 1550-51 (10th Cir. 1987)(en banc).  In Nephew v. City of Aurora, the jury awarded the plaintiffs nominal damages of $1.00.  The Tenth Circuit, sitting en banc, concluded: "Because the district court found that the most important aspect of the judgment was the vindication of plaintiffs' civil rights and its message to the police department, we cannot conclude that the trial court's award [of attorneys' fees] was an abuse of discretion."  Id.

Once a court determines that a party is a prevailing party, it must then determine what amount of reasonable attorney's fees should be awarded.  See Phelps v. Hamilton, 120 F.3d at 1130. "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under Section 1988." Farrar v. Hobby, 506 U.S. at 114.  The most important factor in determining the reasonableness of an attorneys' fees award is the degree of success obtained.  See Farrar v. Hobby, 506 U.S. at 114. In a civil rights action for compensatory and punitive damages, awarding only nominal damages highlights the plaintiff's failure to prove actual injury or any basis for awarding punitive damages. See Farrar v. Hobby, 506 U.S. at 115.  "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."  Farrar v. Hobby, 506 U.S. at 115.

In Farrar v. Hobby, the jury found that the defendant, Hobby, deprived Farrar of a civil right. The Fifth Circuit affirmed but determined that Farrar was entitled to only nominal damages against Hobby.  See id. at 107.  The Supreme Court held that the district court abused its discretion by granting Farrar attorney's fees based on his "technical" victory.  Id. at 114; id. at 116 (O'Connor,

J., concurring)("If ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar.  He filed a lawsuit demanding 17 million dollars from six defendants.  After 10 years of litigation and two trips to the Court of Appeals, he got one dollar from one defendant.").  According to the Supreme Court: "Th[e] litigation accomplished little beyond giving petitioners the 'moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." Farrar v. Hobby, 506 U.S. at 115 (citation omitted).  The plurality thus held that a technical vindication of one's constitutional rights alone is not enough to justify an award of attorney's fees under § 1988.

In her concurring opinion, Justice O'Connor indicated that, "[w]hen the plaintiff's success is purely technical or de minimus, no fees can be awarded.  Such a plaintiff either has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero." Id. at 117 (O'Connor, J., concurring).  Justice O'Connor "established a three-part analysis 'to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees.'"  Brandau v. Kansas, 168 F.3d 1179, 1181 (10th Cir. 1999)(quoting Phelps v. Hamilton, 120 F.3d at 1131)(adopting Justice O'Connor's framework)).  See Brandau v. Kansas, 168 F.3d at 1181 (adopting Justice O'Connor's framework).  "This framework requires the district court to determine the 'relevant indicia of success' by examining: (1) the difference between the judgment recovered and the judgment sought; (2) 'the significance of the legal issue on which the plaintiff prevailed'; and (3) 'the public purpose served' by the litigation." Brandau v. Kansas, 168 F.3d at 1181 (quoting Farrar v. Hobby, 506 U.S. at 121-22 (O'Connor, J., concurring)).  See Phelps v. Hamilton, 120 F.3d at 1131.

In Barber v. T.D. Williamson, 254 F.3d 1223 (10th Cir. 2001), the Tenth Circuit clarified

Farrar v. Hobby's second and third factors.  The second factor -- "the significance of the legal issue on which the plaintiff claims to have prevailed" -- is similar to the first factor.  Id. at 1230 (citing Farrar v. Hobby, 506 U.S. at 121 (O'Connor, J., concurring)).  "'[T]he second factor . . . goes beyond the actual relief awarded [which is the focus of the first factor] to examine the *extent* to which the plaintiff[] succeeded on [his] theory of liability.'"  Barber v. T.D. Williamson, 254 F.3d at 1231 (quoting Phelps v. Hamilton, 120 F.3d at 1132).

In Barber v. T.D. Williamson, the Tenth Circuit also discussed the differing responses by the circuit courts on how to apply the third factor -- "the accomplishment of a public goal."  254 F.3d at 1231.  Some courts read the factor restrictively, that is, deeming it satisfied only when the victory has served some broader public purpose.  See Barber v. T.D. Williamson, 254 F.3d at 1231-32.  Others "have looked at the third factor in more generous terms, concluding that a public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts defendants on notice that it needs to improve, and/or provokes a change in the defendant's conduct."  Id. at 1232.  The Tenth Circuit in Barber v. T.D. Williamson ultimately adopted a broader approach, but admonished that it should not be construed too liberally.  See id. at 1233 (explaining that, in Farrar v. Hobby, "no important right had been vindicated because it was not even clear what 'kind of lawless conduct . . . might be prevented'")(quoting Farrar v. Hobby, 506 U.S. at 122 (O'Connor, J., concurring)).

After Farrar v. Hobby, the Tenth Circuit has continued to award attorney's fees to civil rights plaintiff's recovering only nominal damages.  See, e.g., Brandau v. Kansas, 168 F.3d at 1183 ("[W]hat is controlling [in determining entitlement to a fee award] is Plaintiff's vindication of her civil rights and of important rights of co-workers, even if she sought only a modest amount of

damages."); Koopman v. Water Dist. No. 1, 41 F.3d at 1421 (reversing denial of attorneys' fees where plaintiff was awarded $1.00 nominal damages); Phelps v. Hamilton, 120 F.3d at 1131 ("The general rule under § 1988 is that the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'")(quoting Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989)). "Indeed this Court could not locate any decisions in which the Tenth Circuit has reversed a district court for awarding fees when there was an award of nominal damages. Moreover, the Tenth Circuit has not affirmed an order denying fees" and has "reversed orders denying any fees." Sanchez v. Matta, No. CIV 03-0297 JB/LFG, 2005 WL 2313621, *4 (D.N.M. July 29, 2005)(Browning, J.).

        In Koopman v. Water District No. 1, the Tenth Circuit reversed the district court's decision to deny attorneys' fees for a plaintiff that it granted nominal damages on summary judgment in a § 1983 case. See 41 F.3d at 1421. The Tenth Circuit applied the Farrar v. Hobby analysis, stating: "[I]t is usually appropriate to deny fees when only nominal damages are awarded." 41 F.3d at 1420. But the Tenth Circuit distinguished Koopman's case from Farrar v. Hobby on the ground that Farrar v. Hobby benefitted only Farrar. The Tenth Circuit noted that "'the most critical factor' in determining the reasonableness of a fee award 'is degree of success obtained.'" 41 F.3d at 1420 (citing Farrar v. Hobby, 506 U.S. at 119)(citation omitted). Koopman's victory, "in sharp contrast to Farrar's, had significant implications in establishing basic rights for public employees holding a similar property interest." 41 F.3d at 1421. "Although it is true that Koopman received only a nominal award, the present and future employees of the District [benefitted] by having their rights affirmed." 41 F.3d at 1421. The Tenth Circuit concluded that, under Farrar v. Hobby, Koopman was not entitled to full attorneys' fees, but remanded the case for a determination on an appropriate

-37-

award.  See 41 F.3d at 1421.

      In Sanchez v. Matta, the Court stated:

> The cases in this circuit indicate that the prevailing party in civil rights litigation, even those winning only nominal damages, is generally entitled to attorney's fees and costs.  As the Tenth Circuit explained in Robinson v. City of Edmond, 160 F.3d 1275 (10th Cir. 1998): "The implication of our cases is that when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees."  Robinson v. City of Edmond, 160 F.3d at 1280.

2005 WL 2313621, *4.

### 3.  *Farrar V. Hobby* Applies to FDCPA Cases.

      While the Tenth Circuit has not addressed whether Farrar v. Hobby applies to FDCPA cases, the Courts of Appeals that have reached the question uniformly agree that is does.  See, e.g., Zagorski v. Midwest Billing Serv.s, Inc., 128 F.3d at 1166; Johnson v. Eaton, 80 F.3d at 152; Carroll v. Wolpoff & Abramson, 53 F.3d at 629-30; Tolentino v. Friedman, 46 F.3d at 651; Graziano v. Harrison, 950 F.2d at 114; de Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 235 (1st Cir. 1990).  See also Joe v. Payco-Gen. Am. Credits, Inc., 34 F.3d 1072, at *1 ("Assuming without deciding that Farrar applies in FDCPA cases, we conclude that the award of attorney's fees in this case is consistent with Farrar and the FDCPA.").  Before the Supreme Court's opinion in Farrar v. Hobby, the Tenth Circuit directed district courts to consider the Supreme Court's § 1983 precedent when determining reasonable fees under the FDCPA.  See Mares v. Credit Bureau of Raton, 801 F.2d at 1209-10 (regarding attorney's fees in a FDCPA case, stating: "We expect counsel and district courts to observe the guidelines and respect the admonitions set out by the Supreme Court in [Pennsylvania v. Del. Valley Citizens' Council For Clean Air, 478 U.S. 546 (1986); Blum v. Stenson, 465 U.S. 886 (1984)(civil rights action)], Hensley, and other cases relating to fee

awards . . . .").  See also Hensley v. Eckerhart, 461 U.S. at 436–37 (stating that, when a § 1983 "a plaintiff has achieved only partial or limited success," the district court, in calculating an appropriate fee award, "may simply reduce the award to account for the limited success").  In Anchondo v. Anderson, Crenshaw & Assocs., LLC, the Tenth Circuit applied the Supreme Court's § 1983 opinion in Perdue v. Kenny A. ex rel. Winn when it reviewed a district court's award of attorney's fees under the FDCPA.  Moreover, The Tenth Circuit has also applied Farrar v. Hobby outside of the § 1983 context.  See, e.g., Miller v. Bd. of Educ. of Albuquerque Pub. Schs., 565 F.3d 1232, 1247 (10th Cir. 2009)(applying Farrar v. Hobby to determine attorney's fees for an Individuals with Disabilities Education Act claim); Keelan v. Denver Merch. Mart, 182 F. App'x 806, 808 (10th Cir. 2006)(applying Farrar v. Hobby to a Title VII claim); Bartee v. Michelin N. Am., Inc., 160 F. App'x 810, 813 (10th Cir. 2006)(applying Farrar v. Hobby to a American's with Disabilities Act claim); Browder v. City of Moab, 427 F.3d 717, 722 (10th Cir. 2005)(applying Farrar v. Hobby to Clean Water Act and Resource Conservation Recovery Act claims); Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074, 1076-77 (10th Cir. 1998)(applying Farrar v. Hobby to a Pregnancy Discrimination Act claim).  The Court will therefore "observe the guidelines and respect the admonitions set out by the Supreme Court in" Farrar v. Hobby to determine whether to adjust R. Obenauf's attorney's fees in light of his limited success on his FDCPA claim.  Mares v. Credit Bureau of Raton, 801 F.2d at 1209-10.

"Congress intended that the [FDCPA] be enforced primarily by aggrieved consumers bringing civil actions against offending debt collectors."  Beattie v. D.M. Collections, Inc., 764 F. Supp. 925, 927 (D. Del. 1991)(citing S. Rep. No. 382, 95th Cong., 1st Sess. 5, reprinted in 1977 U.S.Code Cong. & Admin. News 1695, 1699 ("The committee views this legislation as primarily

self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance.")).  Like 42 U.S.C. § 1988's allowance that a "court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," the FDCPA provides for an award of attorney's fees to a successful party:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.  On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1692k(a)(3).  "Although the fee award under § 1692k is mandatory in all but the most unusual circumstances the statute makes clear that calculation of the appropriate award must be left to the district court."  Carroll v. Wolpoff & Abramson, 53 F.3d at 628 (citing Graziano v. Harrison, 950 F.2d at 113-14)("[T]he concept of reasonableness -- the statutory centerpiece of the § 1692k fee award -- itself implies that the fee calculation is inextricably linked to the facts and circumstances of the underlying litigation.").

> It should be clear, then, that § 1692k does not mandate a fee award in the lodestar amount.  If the concept of discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances.  Hensley itself recognized that, in certain circumstances, an award in the lodestar amount may be excessive.  When "a plaintiff has achieved only partial or limited success," the district court, in calculating an appropriate fee award, "may simply reduce the award to account for the limited success."  Hensley, 461 U.S. at 436-37 . . . .

Carroll v. Wolpoff & Abramson, 53 F.3d at 629.

The Court finds guidance in a Seventh Circuit opinion remanding a case and directing the district court how to calculate attorneys' fees under the FDCPA.  In Zagorski v. Midwest Billing Services, Inc., the Seventh Circuit held that a district court abused its discretion when it denied the

plaintiffs' request for attorneys' fees for their FDCPA claim after it entered judgment against the defendants for $100.00 plus costs on the parties stipulation.   Applying the Seventh Circuit's interpretation of Farrar v. Hobby, "the district court concluded that the only reasonable fee was no fee." Zagorski v. Midwest Billing Servs., Inc., 128 F.3d at 1166.  The Seventh Circuit held that the district court abused its discretion, because it committed an error of law when it deviated from Seventh Circuit precedent holding "that the award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory."  128 F.3d at 1166 (citing Tolentino v. Friedman, 46 F.3d at 651).  The Seventh Circuit stated:

> On remand, the district court must determine a reasonable attorney's fee.  In undertaking such a task, the methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988 will serve as a useful guide.  See Hensley v. Eckerhart, 461 U.S. 424, 433 . . . (1983).  Indeed, in Tolentino, we noted that district courts should use this methodology when calculating an award of attorney's fees under the Fair Debt Collection Practices Act.  Tolentino, 46 F.3d at 652.  We further noted that the Supreme Court has stated that "'the most critical factor'" in determining the reasonableness of the award "'is the degree of success obtained.'" Farrar, 506 U.S. at 114 (quoting Hensley, 461 U.S. at 436).  Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked.  In this regard, we note that our Chief Judge recently has written that "the cumulative effect of petty violations . . . may not be petty, and if this is right then the mere fact that the suit does not result in a large award of damages or the breaking of new . . . ground is not a good ground for refusing to award any attorneys' fees."  Hyde v. Small, 123 F.3d 583, 585 (7th Cir.1997).  We also believe that this reasoning must be considered in determining the degree of success obtained in fixing the amount of the fee.  Finally, we also note that we have stated that, "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." Tolentino, 46 F.3d at 652; see also Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993).  "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law."  Tolentino, 46 F.3d at 653.  Of course, the trial court, who "enjoy[s] a decided advantage over appellate courts in calculating fee awards," Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir.1995), retains a great deal of discretion in fixing the amount of the final award.

128 F.3d at 1166-67.  While the Court agrees that attorneys' fees should be adequate to attract competent counsel, but they should not so large that it is a windfall for attorneys -- who should not be encouraged to grow fat off of lackluster cases, or pester the court with trifles in the hopes of capturing large attorneys' fees from dubious claims.  The Tenth Circuit has noted in the § 1983 context that "the purpose of allowing the prevailing party to recover the fee is to incentivize private citizens to act as private attorneys general in vindicating federal rights protected under the statute," but cautions that "the fee award should function to attract competent counsel, but not produce windfalls to attorneys."  Hackwell v. United States, 491 F.3d 1229, 1240 (10th Cir. 2007).  See Farrar v. Hobby, 506 U.S. at 121-22 (O'Connor, J., concurring)(basing the availability of attorneys fees in part on whether the litigation "accomplished some public goal other than occupying the time and energy of counsel, court, and client," and stating that "[s]ection 1988 is not 'a relief Act for lawyers.'" (quoting Riverside v. Rivera, 477 U.S. 561, 588 (1986) (Rehnquist, J., dissenting))).  Cf. Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1270 (10th Cir. 2004)("One of the perverse consequences of treating nominal damages as an exception to ordinary mootness principles is that it would create an incentive for plaintiffs in cases covered by fee-shifting statutes to continue to run up legal bills even after the underlying dispute no longer presents any justiciable legal controversy.").

In Graziano v. Harrison, the Third Circuit addressed a district court's denial of a the plaintiff's request for attorney's fees after granting summary judgment for the plaintiff on one count, granting summary judgment for the debt collector on remaining counts, and awarding nominal statutory damages.  The plaintiff brought an action under the FDCPA seeking compensatory damages for costs incurred and for emotional distress, statutory damages of $1000.00 per violation,

and attorney's fees.  The district court awarded nominal damages.  The Third Circuit held that the plaintiff had shown two violations of the FDCPA, whereas the district court had held that the plaintiff had shown only one.  "The district court declined to award an attorney's fee, stating that Graziano 'does not appear to have been subjected to any egregious conduct which calls for a special, discretionary remedy.'" 950 F.2d at 113.  The Third Circuit, finding an additional violation, vacated the district court's denial of attorney's fees and remand for reconsideration.  The Third Circuit provided guidance to the district court on remand:

> In so remanding, we think it may be helpful to address the standards to be applied in determining an appropriate attorney's fee.  Section 1692k(a) sets forth the three standard components of liability for violations of the Act: it states that a debt collector who violates the act "is liable" for actual damages, statutory damages as determined by the court, and a reasonable attorney's fee.  Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.  See de Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 235 (1st Cir.1990).  Indeed, several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted.  See Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir. 1989); Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir. 1989); cf. de Jesus, 918 F.2d at 233-34 (construing the parallel provision of the Truth in Lending Act to mandate a fee award to a prevailing plaintiff).
>
> The conclusion that an award of attorney's fees is mandated is further supported by section 1692k(b).  That section specifies that, in determining the amount of statutory damages to be awarded, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  Cases interpreting this section have made clear that in the instance of a single, trivial, and unintentional violation of the Act, it is within the court's discretion to decline to award statutory damages at all.  See, e.g., Pipiles, 886 F.2d at 28; Emanuel, 870 F.2d at 809.  However, section 1692k contains no parallel language directing the court to consider particular factors in determining a reasonable attorney's fee.  In light of the explicit listing of factors to be considered in the award of statutory damages, and the absence of such a list for attorney's fees, we think it inappropriate to read such factors into the word "reasonable" in section 1692k(a)(3).

We conclude that, in a typical case under the Act, the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees.  Among the factors the court may consider in determining the appropriate amount of the fee is the degree of success obtained by the prevailing plaintiff; if the plaintiff has only partial or limited success, a reduction in the award of attorney's fees may be appropriate.  See Hensley, 461 U.S. at 434-37 . . . .  The court should also assess the reasonableness of the hours expended by counsel for the prevailing party.  See id. at 433-34 . . . .  Only in unusual circumstances, however, may the court decline to award a fee; in such circumstances, it should formulate particularized findings of fact and conclusions of law explaining its decision.  See de Jesus, 918 F.2d at 234 & n.4.

950 F.2d 113-14 (some citations omitted).

The Seventh and Third Circuits are not alone in holding that an award of attorneys' fees is mandatory under the FDCPA, but subject to adjustment under Farrar v. Hobby and Hensley v. Eckerhart.  The Second Circuit has also mandated the award of attorney's fees to a successful plaintiff in an FDCPA action.  See Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d at 28; Emanuel v. American Credit Exch., 870 F.2d at 809.  Additionally, the United States Court of Appeals for the Fourth Circuit has held that an award of attorney's fees under the FDCPA is mandatory in the absence a plaintiff's bad faith conduct.  See Carroll v. Wolpoff & Abramson, 53 F.3d at 628-29.  "[T]he First Circuit has held that the award of attorney's fees to a successful plaintiff in an action under the Truth in Lending Act ("TILA") is mandatory.  The language of the attorney's fees provision in TILA is identical to the parallel provision in the FDCPA."  Zagorski v. Midwest Billing Serv.s, Inc., 128 F.3d at 1166 n.3 (citing de Jesus v. Banco Popular de Puerto Rico, 918 F.2d at 233-34).  But see Johnson v. Eaton, 80 F.3d at 151-52 (holding that district court's decision to award no attorney's fees to a plaintiff who prevailed in FDCPA action was proper where plaintiff

-44-

proved only a technical violation of the Act with no award).[6]

The Fourth Circuit has addressed what attorneys' fees were reasonable when a plaintiff obtained a small award in a FDCPA case. In Carroll v. Wolpoff & Abramson, the Fourth Circuit affirmed a district court's adjustment of attorney's fees from the $9,783.63 lodestar amount the plaintiff requested to "$500 in light of her limited success in the underlying litigation." 53 F.3d at 627. The plaintiff's action was based on a single June 11, 1990 letter from a law firm seeking to

---

[6] Under Fifth Circuit precedent, default judgment without any award may be insufficient to make a plaintiff a prevailing party. In Howard v. Weston, 354 F. App'x 75 (5th Cir. 2009), the Fifth Circuit affirmed a district court's holding that "Howard was not a prevailing party because he was awarded no damages or other relief as a result of Weston's default." 354 F. App'x at 77. Applying Farrar v. Hobby to on Howard's copyright claim, the Fifth Circuit held:

> To be awarded attorney's fees and costs under Section 505 of the Copyright Act and Federal Rule of Civil Procedure 54, Howard must be a prevailing party. 17 U.S.C. § 505; Fed. R. Civ. Proc. 54(d). A prevailing party must: (1) obtain actual relief that (2) materially alters the legal relationship between the parties and (3) modifies the defendant's behavior in such a way that benefits the plaintiff at the time of the judgment. Dearmore v. City of Garland, 519 F.3d 517, 521 (5th Cir. 2008). "To become a prevailing party, a plaintiff must obtain, at an absolute minimum, actual relief on the merits of [the] claim." Farrar v. Hobby, 506 U.S. 103, 116 . . . (O'Connor, J., concurring) (internal citations and quotation marks omitted). Howard obtained no damages or other relief despite the entry of default against Weston.

> The district court did not err in finding that Howard does not qualify as a prevailing party and should not be awarded attorney's fees and costs. Cf. Farrar, 506 U.S. at 112 . . . ("To be sure, a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, the moral satisfaction [that] results from any favorable statement of law cannot bestow prevailing party status." (internal quotation marks and citation omitted) (alteration in original)).

354 F. App'x at 77-78. While the Fifth Circuit's opinion splits with other circuits that hold attorney's fees are always mandated under the FDCPA for successful plaintiffs, because the Court awards R. Obenauf $150.00 for emotional distress, it need not and does not resolve this division in authority.

collect a debt, which failed to comply with the FDCPA's debt collection notice requirements.  See
15 U.S.C. § 1692e(11)(requiring disclosure, "in all communications made to collect a debt or to
obtain information about a consumer, that the debt collector is attempting to collect a debt and that
any information obtained will be used for that purpose").  The plaintiff sought $1,000.00 in statutory
damages.  The district court awarded $50.00.  The plaintiff then moved for an award of $9,783.63
for attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).  "[T]he district court awarded $500 in
attorney's fees.  In its memorandum opinion, the court noted that Carroll had received little more
than nominal damages in the underlying litigation and that Wolpoff & Abramson's single violation
of the Act was at most a technical misstep."  53 F.3d at 627.  The Fourth Circuit affirmed, stating:
"In light of the guidelines announced in Farrar v. Hobby, we find no abuse of the district court's
discretion on these facts":

> First, appellant received only $50 in statutory damages at the close of the
> underlying litigation.  This award was a mere five percent of the amount of statutory
> damages she initially sought.  In addition, Carroll voluntarily abandoned her claim
> for actual damages for emotional distress on remand from the Fourth Circuit.  The
> district court in turn determined that a fee award of $500 -- ten times the amount of
> statutory damages Carroll ultimately received -- was appropriate.  See Farrar, 506
> U.S. at [114] . . . (in civil rights action for monetary damages, district court should
> consider amount of damages awarded as compared to amount sought in determining
> appropriate fee award).

> Farrar reiterated the touchstone of an attorney's fee award first articulated in
> Hensley: "'the most critical factor' in determining the reasonableness of a fee award
> 'is the degree of success obtained.'"  Farrar, 506 U.S. at [114] . . . (quoting Hensley,
> 461 U.S. at 436 . . . ).  In view of the fact that Carroll abandoned her claim for
> emotional distress damages arising from Wolpoff & Abramson's conduct and that she
> was awarded only $50 in statutory damages despite her claim of entitlement to the
> $1,000 statutory maximum, we cannot say that the "degree of [Carroll's] success"
> dictated a larger fee award.  See also Graziano, 950 F.2d at 114 ("if the plaintiff has
> only partial or limited success, a reduction in the award of attorney's fees [under
> § 1692k] may be appropriate").

> It is also notable that Carroll established at most a technical violation of the

-46-

§ 1692e(11) mandate by Wolpoff & Abramson.  Indeed, the district court reasoned that the law firm's conduct "was hard[l]y morally culpable or otherwise deserving of anything more than a very small award of damages."  We find no abuse of discretion in the court's conclusion that the fees awarded should bear some rational relationship to the nature of the defendant's violation.

In contrast to Wolpoff & Abramson's technical violation of § 1692e(11), we note that other consumer protection statutes, and indeed, other provisions of the FDCPA, aim at truly abusive or deceitful debt collection, credit reporting, and similar practices.  Proof of these sorts of violations may establish a foundation for larger attorney's fee awards.  See, e.g., Crossley v. Lieberman, 868 F.2d 566, 571 (3d Cir. 1989) (attorney violated §§ 1692e(5) and 1692e(10) of the FDCPA in attempting to collect $297 debt by falsely implying that foreclosure action on 68-year-old widow's home was in progress and by failing to inform debtor that she had a right to cure the default); Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264, 1273 (9th Cir. 1990) (employer violated Fair Credit Reporting Act by obtaining information on plaintiff from consumer reporting agency under false pretenses; employer intended to use credit report to assist in its defense of plaintiff's action for breach of employment contract).

Carroll nevertheless contends that the significance of her litigation before this court on the proper interpretation of § 1692e(11) warrants a fee award in the lodestar amount.  We do not disparage the value of appellant's efforts in clarifying the application of the statute.  At the same time, however, appellant achieved no equitable relief of any kind.  Thus, it was entirely proper for the district court to view as the salient measure of her success in the underlying litigation the small amount of damages she recovered from the opposing party for its technical statutory violation. . . .  In view of the statutory language, it was not an abuse of the district court's discretion to measure Carroll's success in terms of the nature of Wolpoff & Abramson's violation and the limited damage award she received.

53 F.3d at 629-30.  Accordingly, the Fourth Circuit affirmed the district court's award of $500.00 in attorney's fees, holding: "It is not apparent that a party satisfying a judgment of $50 must then be compelled to pay almost $10,000 in fees."  53 F.3d at 631.

The Court will award reasonable attorney's fees.  First, R. Obenauf brought a "successful action."  15 U.S.C. § 1692k(a)(3).  FFG's "default judgment constitutes an admission of liability." Flaks v. Koegel, 504 F.2d at 707.  See Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002)("The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of

fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts

thus established." (quoting Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987)). The Court

awards R. Obenauf $150.00 for emotional distress. Thus, R. Obenauf "met that minimum condition

for prevailing party status. Through this lawsuit, he obtained an enforceable judgment . . . ." Farrar

v. Hobby, 506 U.S. at 116 (O'Connor, J., concurring).

Like the plaintiff in Carroll v. Wolpoff & Abramson, R. Obenauf obtained a fraction of the

relief he sought. See Farrar v. Hobby, 506 U.S. at 114 ("'[T]he most critical factor' in determining

the reasonableness of a fee award 'is the degree of success obtained.'" (quoting Hensley v.

Eckerhart, 461 U.S. at 436). R. Obenauf requests $1,000.00 in statutory damages and "more than"

$5,000.00 in actual damages. Brief at 16, 23. The Court awards R. Obenauf less than one-fortieth

of the reward he sought -- $150.00. The Court "cannot say that the "degree of [R. Obenauf's]

success" dictate[s]" that the Court award the lodestar amount. Carroll v. Wolpoff & Abramson, 53

F.3d at 630 (citing Graziano v. Harrison, 950 F.2d at 114 ("[I]f the plaintiff has only partial or

limited success, a reduction in the award of attorney's fees [under § 1692k] may be appropriate.")).

In addition to his modest success, R. Obenauf's lawsuit did not resolve a significant issue

and served little if any public purpose. See Farrar v. Hobby, 506 U.S. at 120-22 (O'Connor, J.,

concurring)(outlining factors as (i) the difference between the judgment recovered and the recovery

sought; (ii) the significance of the legal issue on which the plaintiff prevailed; and (iii) the public

purpose served by the litigation). R. Obenauf has prevailed only because "default judgment

constitutes an admission of liability." Flaks v. Koegel, 504 F.2d at 707. Cf. In re Adler, Coleman

Clearing Corp., 205 F. App'x 856, 858 (2d Cir. 2006)("[T]he general rule is well-established that

default judgments lack issue-preclusive effect.")(citing Restatement (Second) of Judgments § 27

cmt. e, at 257 (1982); Abrams v. Interco Inc., 719 F.2d 23, 33 n. 9 (2d Cir. 1983)); In re Conner, 37

F. App'x 445, 448 n.3 (10th Cir. 2002)("[I]ssue preclusion would not apply to a default judgment

because when a default is entered the merits of foreclosure have not been litigated.").  Consequently,

he established "at most a technical violation" of the FDCPA.  Carroll v. Wolpoff & Abramson, 53

F.3d at 630.  See Barber v. T.D. Williamson, 254 F.3d at 1231 ("[T]he second factor . . . goes

beyond the actual relief awarded [which is the focus of the first factor] to examine the *extent* to

which the plaintiff[] succeeded on [his] theory of liability." (quoting Phelps v. Hamilton, 120 F.3d

at 1132)(internal quotation marks omitted)).  He has not clarified the meaning of the FDCPA or

protected other parties rights.  Barber v. T.D. Williamson, 254 F.3d at 1233 (explaining that in

Farrar v. Hobby, "no important right had been vindicated because it was not even clear what 'kind

of lawless conduct . . . might be prevented'" (quoting Farrar v. Hobby, 506 U.S. at 122 (O'Connor,

J., concurring))).

     The Court will therefore adjust downward its attorneys' fees award from the lodestar amount.

Because R. Obenauf brought a successful suit, the Court believes it should award some attorneys'

fees.  Most Courts of Appeals hold that an award is generally mandatory, even for nominal damages.

See Zagorski v. Midwest Billing Servs., Inc., 128 F.3d at 1166; Carroll v. Wolpoff & Abramson,

53 F.3d at 628-29; Graziano v. Harrison, 950 F.2d at 114; Pipiles v. Credit Bureau of Lockport, Inc.,

886 F.2d at 28; Emanuel v. American Credit Exch., 870 F.2d at 809.  Moreover, the Tenth Circuit

has demonstrated that it favors awarding attorney's fees.  See Koopman v. Water Dist. No. 1, 41

F.3d at 1421 (reversing denial of attorneys' fees where plaintiff was awarded $1.00 nominal

damages); Phelps v. Hamilton, 120 F.3d at 1131 ("The general rule under § 1988 is that the

prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would

render such an award unjust.'")(quoting <u>Blanchard v. Bergeron</u>, 489 U.S. at 89 n.1).  Nonetheless, R. Obenauf has obtained only modest success.  When "a plaintiff has achieved only partial or limited success," the district court, in calculating an appropriate fee award, "may simply reduce the award to account for the limited success."  <u>Hensley v. Eckerhart</u>, 461 U.S. at 436-37.  In <u>Carroll v. Wolpoff & Abramson</u>, the Fourth Circuit affirmed a district court's adjustment of attorney's fees from the $9,783.63 lodestar amount the plaintiff requested to "$500 in light of her limited success in the underlying litigation."  53 F.3d at 627.  The plaintiff in <u>Carroll v. Wolpoff & Abramson</u> obtained a larger award than R. Obenauf -- obtaining $50.00 of the $1,000.00 in statutory damages requested compared to R. Obenauf's $150.00 of the $5,000.00 to $10,000.00 requested for emotional distress and $1,000.00 in statutory damages.  The plaintiff in <u>Carroll v. Wolpoff & Abramson</u> also demonstrated a violation of FDCPA, whereas R. Obenauf prevails on a procedural device.  Accordingly, the Court believes it would be within its discretion to award R. Obenauf $500.00 in attorneys' fees.  The Court notes, however, that "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases."  <u>Tolentino v. Friedman</u>, 46 F.3d at 652.  The Court is concerned that $500.00 in attorneys' fees would not accomplish that goal.  <u>See</u> S. Rep. No. 382, 95th Cong., 1st Sess. 5, reprinted in 1977 U.S.Code Cong. & Admin. News 1695, 1699 ("The committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance.")).  The Court therefore believes that an award of $2,500.00 is appropriate in this case.  This award reflects R. Obenauf's modest success in this case, while providing an incentive to attorneys to bring these types of cases.  R. Obenauf did obtain emotional distress damages, which is more than nominal damages.  The incentive is not so

large that it is a windfall for Mr. Treinen.  While full attorney's fees are better awarded in egregious cases or cases that stand firmly on their merits, the Court believes that an award of $2,500.00 serves Congress' intent of making the FDCPA self executing through civil suits.

## II.    THE COURT AWARDS R. OBENAUF INJUNCTIVE RELIEF AND $300.00 IN STATUTORY DAMAGES FOR FFG'S VIOLATION OF THE NMUPA.

R. Obenauf contends that the nature of FFG's actions warrants trebling his damages under the NMUPA.  See Brief at 17.  R. Obenauf contends that FFG's actions violated the NMUPA for largely the same reasons that he alleges they violated the FDCPA.  R. Obenauf first asserts that a violation of the FDCPA amounts to a violation of the NMUPA.  See Brief at 6 ("Any action that violates another law is considered an actionable unfair trade practice under the UPA.").  R. Obenauf also contends that the "New Mexico legislature expressly provided that the UPA covers 'the collection of debts.'" NMSA 1978, § 57-12-2D.  He argues that FFG violated the NMUPA's prohibition against "stating that a transaction involves rights, remedies or obligations that it does not involve." NMSA 1978, § 57-12-2D(15).  R. Obenauf presumably alleges that FFG misrepresented its ability to collect debts in New Mexico, because it is not registered with NMFID.  The Court, however, has rejected this line of argument, because CARA provides an exemption for out of state debt collectors pursuing certain types of debt, and R. Obenauf presents no evidence or allegations that Neugebauer's debts do not fall into this category.

R. Obenauf cites Billsie v. Brooksbank, 525 F. Supp. 2d 1290, 1295 (D.N.M. 2007), for the proposition that "aiming collection tactics at the wrong person can support [a] claim under UPA." Brief at 6.  In Billsie v. Brooksbank, the Honorable Robert C. Brack, New Mexico District Court Judge, denied a defendant summary judgment against a plaintiff's NMUPA claim based on the defendant's listing her social security number on a wage garnishment application and answer along

with a debtor's social security number.  525 F. Supp. 2d at 1292.  Judge Brack held genuine

questions of material fact existed whether the defendant had violated the NMUPA:

> Defendant Brooksbank listed two social security numbers on the garnishment
> application and answer, yet listed one social security number on the judgment on writ
> of garnishment he submitted to the state court judge.  Viewing the evidence in the
> light most favorable to the Plaintiff, and contrary to Defendant Brooksbank's
> assertions, a jury could find that the social security number discrepancy shows (1)
> that Defendant Brooksbank made a false or misleading statement, (2) that he
> knowingly misled a court and/or the garnishee, and (3) that his conduct tends to or
> did mislead the state court and/or the garnishee.  Consequently, Defendant
> Brooksbank's Motion for Summary Judgment is denied.

525 F. Supp. 2d at 1295.  Unlike the plaintiff in Billsie v. Brooksbank, R. Obenauf does not present

evidence or allegations of FFG's deception.

Thus, like FFG's liability under the FDCPA, its liability under NMUPA is based on FFG's

admission of liability through the Court's entry of default judgment.  See Flaks v. Koegel, 504 F.2d

at 707.  "[W]hen a default judgment is entered on a claim for an indefinite or uncertain amount of

damages, facts alleged in the complaint are taken as true, except facts relating to the amount of

damages."  United States v. Craighead, 176 F. App'x at 924-25 (quoting American Red Cross v.

Community Blood Center Of The Ozarks, 257 F.3d 859, 864 (8th Cir. 2001))).   R. Obenauf,

parroting the NMUPA's language that provides statutory damages against defendants that "willfully

engaged in the trade practice," alleges that "FFG willfully engaged in these unlawful trade

practices."  Complaint ¶ 21 at 3.  The Court takes this allegation as true.  See United States v.

Craighead, 176 F. App'x at 924-25; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.

1981)(noting that, where a party moves for a default judgment after another party's default, the

moving party is "entitled to all reasonable inferences from the evidence offered").  The NMUPA

provides:

Any person who suffers <u>any loss of money or property, real or personal</u>, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater.  Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

N.M.S.A. 1978, § 57-12-10B.

R. Obenauf asks the Court to treble his emotional damages.  Emotional distress damages are not available under the NMUPA.  <u>See</u> N.M.S.A. 1978, § 57-12-10B (providing private remedies for "loss of money or property, real or personal"); <u>Obenauf v. Enhanced Recovery Corporation</u>, No. CIV. 10-1179, Memorandum Opinion and Order Granting Default Judgment at 8-9 (Doc. 14)(D.N.M. April 1, 2011)(holding that emotional damages are not available under the NMUPA). R. Obenauf acknowledges that the Supreme Court of New Mexico has not stated that emotional damages are available under the NMUPA.  <u>See</u> Brief at 11 ("The New Mexico Supreme Court has not addressed whether aggravation and frustration damages are available under the UPA."); <u>id.</u> at 12 ("No New Mexico state court has, in a published decision, directly considered whether emotional distress type damages are awardable under the UPA.").  "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do."  <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d 657, 666 (10th Cir. 2007)(quoting <u>Wankier v. Crown Equip. Corp.</u>, 353 F.3d 862, 866 (10th Cir. 2003))(internal quotation marks omitted).  In <u>Pedroza v. Lomas Auto Mall, Inc.</u>, 625 F. Supp. 2d 1156 (D.N.M. 2009)(Browning, J.), the Court held that emotional damages are unavailable for the alleged breach of warranty of title under the Uniform Commercial Code.  In that case, the plaintiff argued in part that <u>Hale v. Basin Motor Co.</u>, 110 N.M. 314, 795 P.2d 1006 (1990), stood for the proposition that "emotional damages for frustration, aggravation, and

embarrassment were recoverable under the New Mexico Unfair Trade Practices Act on facts similar

to this case's facts."  Pedroza v. Lomas Auto Mall, Inc., 625 F. Supp. 2d at 1160.  The Court rejected

his argument.  In Hale v. Basin Motor Co., the Supreme Court of New Mexico stated:

> In their cross-appeal, the Hales claim they should have been awarded "lost paid
> vacation time" in the amount of $1,041.10 as "damages or costs."  They testified that
> they used paid vacation time from their employment in order to prepare for and
> appear at depositions and trial.  As the Hales admit, however, at the trial court level
> they did not seek this "lost paid vacation time" as part of their claim for damages.
> Whether or not this alleged amount should be included in the damage award cannot
> be raised for the first time on appeal.  See, e.g., Citizens State Bank v. Christmas,
> 107 N.M. 220, 755 P.2d 64 (1988); see also SCRA 1986, 1-052(B)(1)(f).  We may
> have looked favorably on such a damage claim if one actually had been made.
> Certainly, high among the factors motivating legislatures to enact laws such as we
> are considering today is the frustration experienced by consumers having to run
> around to straighten out unfair or deceptive trade practices.

110 N.M. at 3321, 795 P.2d at 1013.  Thus, the plaintiffs sought lost vacation time, not emotional

damages, and the Supreme Court of New Mexico did not decide the matter.  This dicta is too thin

a reed to persuade the Court that the Supreme Court of New Mexico would read "loss of money or

property, real or personal" to include emotional damages, contrary to the statutory language's plain

meaning.  Cf. Gonzales v. Allstate Ins. Co., 122 N.M. 137, 138, 140, 921 P.2d 944, 945, 947

(1996)(holding the term "bodily injury" in the insurance policy at issue was not ambiguous, and that

emotional distress from loss of consortium did not constitute bodily injury or fall within that term);

Holguin v. Tsay Corporation, 146 N.M. 346, 348, 210 P.3d 243, 246 (Ct. App. 2009)("Tsay argues

that the words 'bodily injury' and 'property damage' unambiguously require physical damage to a

patron's person or property and cannot be construed to mean or include emotional injury resulting

from the invasion of privacy alleged.  We agree with Tsay."); Castillo v. City of Las Vegas, 145

N.M. 205, 211, 195 P.3d 870, 876 (Ct. App. 2008)("After considering the narrow circumstances

under which our courts currently permit an award of damages for emotional distress . . . , we

conclude that a plaintiff may not recover for emotional distress based solely on a claim for negligent damage to property."); Economy Preferred Ins. Co. v. Jia, 135 N.M. 706, 710, 92 P.3d 1280, 1284 (Ct. App. 2004)(stating that, to interpret insurance policy terms, the court "must differentiate between bodily injury and emotional injury," and stating that "the alternative would be to extend coverage for bodily harm to all emotional injury, a result that is inconsistent . . . with common-sense notions of what a reasonable insured would understand from the policy language"); Hart v. State Farm Mut. Auto. Ins. Co., 145 N.M. 18, 20-21, 193 P.3d 565, 567-68 (Ct. App. 2008)(determining that New Mexico cases addressing whether emotional injury is included in the concept of "bodily injury" required the conclusion that the child did not suffer bodily injury), cert. denied, 145 N.M. 254, 195 P.3d 1266 (2008); Brenneman v. Bd. of Regents of Univ. of N.M., 135 N.M. 68, 69-70, 84 P.3d 685, 686-87 (2003)(stating that requiring physical injury when applying the term "bodily injury" in insurance contracts is established law in New Mexico).  The dicta in Hale v. Basin Motor Co. is not to the contrary, because vacation time is personal property.  See Arnold v. Arnold, 134 N.M. 381, 386, 77 P.3d 285, 290 (Ct. App. 2003).  The New Mexico Legislature knows how to address emotional damages in statutes, and the legislature distinguishes between property damage and emotional injuries.  See, e.g., N. M. S. A. 1978, § 41-14-4A ("Injuries . . . may include, among others, death, bodily injury, emotional injury or property damage."); N.M.S.A. 1978, § 30-44-2 ("'[P]sychological harm' means emotional or psychological damage of such a nature as to cause fear, humiliation or distress or to impair a person's ability to enjoy the normal process of his life.").  The Court finds no case interpreting "loss of money or property, real or personal" to include emotional damages.  Cf. Kuhn v. Kehrwald, NO. 05C1228, 2006 WL 3404771, at *2 (E.D. Wis. Nov. 22, 2006)("[B]usiness or property injuries do not include emotional distress"); Craig v. Grange

Insurance Co., NO. 17675, 1999 WL 999799 , Ohio App. Ct. Nov. 05, 1999)("'[P]roperty damage'
and 'bodily injury' . . . do[ ] not include emotional distress."); Chatton v. National Union Fire Ins.
Co., 13 Cal. Rptr.2d 318, 324 (Ct. App. 1992)(affirming that "there was no allegation of damage to
tangible property and . . .'bodily injury,' defined as 'bodily injury, sickness or disease,' did not
include emotional distress").  Because R. Obenauf's only compensable damages under the NMUPA
are for postage, which amount to $11.08, the Court awards R. Obenauf $300.00 pursuant to
N.M.S.A. 1978, § 57-12-10B.

The Court will also enjoin FFG from making Romero's telephone ring.  The NMUPA
provides for injunctive relief:

> A person likely to be damaged by an unfair or deceptive trade practice or by an
> unconscionable trade practice of another may be granted an injunction against it
> under the principles of equity and on terms that the court considers reasonable. Proof
> of monetary damage, loss of profits or intent to deceive or take unfair advantage of
> any person is not required.

N.M.S.A. 1978 § 57-12-10A.  R. Obenauf requests that the Court "enjoin[ ] FFG from attempting
to collect any debts via a telephone call placed to the 505 or 575 area codes or via a letter sent to any
address in New Mexico without first obtaining a license as a debt collection agency with New
Mexico Financial Institutions Division."  Brief at 23.  As discussed in Section I.A, the Court will
not grant injunctive relief on R. Obenauf's contention that FFG must be licensed to call consumer
in New Mexico.  The Court therefore denies his request for broad injunctive relief.  The Court will,
however, enjoin FFG from making R. Obenauf's telephone ring at the phone number 505-881-5245.

## III.   THE COURT AWARDS R. OBENAUF $11.08 IN COMPENSATORY DAMAGES FOR FFG'S TORTIOUS DEBT COLLECTION.

R. Obenauf contends that FFG's conduct constitutes tortious debt collection.  This New
Mexico tort concerns collection activity knowingly aimed at the wrong person, thus invading that

person's privacy.  The Supreme Court of New Mexico established the common-law tort of tortious

debt collection in <u>Montgomery Ward v. Larragoite</u>, 81 N.M. 383, 467 P.2d 399 (1970).  The debt

collector in that case pursued Gilbert Larragoite for his brother's debt:

> Gilbert is an employee of Thunderhead Oil Company and lives in Albuquerque.  He has several brothers, one of whom is Ben who lives with his mother in Santa Fe and works at the State Land Office.  In 1964 Ben applied to Montogomery Ward in Santa Fe for a credit card.  A card was issued to 'G. Larragoite' with a mailing address at the Land Office in Santa Fe where Ben worked.  Although Ben testified that he complained that the card was issued to 'G. Larragoite,' nothing was done to change it, and Ben made purchases and payments on the account.  Toward the end of 1966, payments not having been made promptly, Wards commenced a series of actions in its attempts to collect.  These included a call to the State Highway Department where they contacted Phil Larragoite, another brother, who advised Wards of Gilbert's whereabouts, and how he could be reached.  In January, 1967, Gilbert was reached at his place of employment in Albuquerque and denied any knowledge of the account.  A call was made to the mother at the address in Santa Fe where Ben lived.  Further investigation disclosed to Wards that Ben had made the purchases and payments.  The following notation appears in the records of Wards:

>> '4-17-67 (Cont'd) -- Contacted G. Larragoite -- refuses to be responsible.  Recommend that we sue G. Larragoite to force full P.I.F. (payment in full) from B. Larragoite.  Referred to Mr. Distel for O.K. to sue.  4/20/67 Sue now E.R.'

> This was followed by the filing of suit naming both Ben and Gilbert as defendants.  Service of process was made on Gilbert while he was at work and in his superior's presence, and the service papers were shown to the superior by Gilbert.

81 N.M. at 384-85, 467 P.2d at 400-01.  G. Larragoite filed a counterclaim, seeking "recovery for

damages occasioned by Ward's collection tactics alleged to have been wantonly, wilfully and

maliciously performed, resulting in impairment of Gilbert's previous excellent credit rating, and in

the inflicting of severe pain and distress to body and mind, and great mental anguish,

embarrassment, humiliation and shame."  81 N.M. at 385, 467 P.2d at 401.  A jury returned a

verdict for $15,000.00 in damages, and the counter-defendants challenged the verdict.  The Supreme

-57-

Court of New Mexico upheld the verdict:[7]

> We are first called upon to determine if a prima facie showing which would support a judgment in Gilbert's favor was established at the trial.  The theory on which the suit was brought and the case tried is what is known in law as invasion of privacy.
>
> Although we have never been called upon to decide if facts such as those here present can constitute actionable invasion of privacy, we have heretofore recognized such torts.  See Apodaca v. Miller, 79 N.M. 160, 441 P.2d 200 (1968); Blount v. T D Publishing Corporation, 77 N.M. 384, 423 P.2d 421 (1966); Hubbard v. Journal Publishing Co., 69 N.M. 473, 368 P.2d 147 (1962).  We now decide that improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy. . . .  The facts proved in this case as above detailed were sufficient to go to the jury and, if believed by them, to support a verdict for damages.

81 N.M. at 385, 467 P.2d at 401.

Based on the allegations in the Complaint and the testimony at the April 13, 2011 evidentiary hearing, FFG called R. Obenauf one time after receiving notice that the telephone number FFG had on record for Neugebauer was no longer correct.  While R. Obenauf's allegation that FFG contacted him once after receiving his stop-request does not establish an to intent to annoy, abuse, or harass under the FDCP, the Court believes that R. Obenauf's allegation establishes "improper conduct in knowingly and intentionally pursuing a person to force payment of a debt."  81 N.M. at 385, 467 P.2d at 401.  Once FFG received R. Obenauf's letter, it was on notice that Neugebauer was not at the telephone number 505-881-5245.  The Court will therefore award R. Obenauf damages for FFG's tortious debt collection.

At the hearing, R. and S. Obenauf presented testimony that the August 27, 2010 telephone

---

[7] The Supreme Court of New Mexico remitted the award, which was based on wantonly, wilfully and maliciously performed tactics, to $7,500.00.

calls disturbed R. Obenauf's concentration.  These calls preceded R. Obenauf's December 20, 2010 Letter requesting FFG to stop making his telephone ring.  Taking the evidence R. Obenauf presented at the hearing and the factual allegations in the Complaint as true, R. Obenauf has not established that the August 27, 2010 telephone calls involved improper conduct, because at that time FFG had not received R. Obenauf's Letter informing it that Neugebauer no longer owned the telephone number 505-881-5245.  R. Obenauf has therefore not presented evidence or allegations that FFG's August 2010 calls were improper conduct knowingly made.  R. Obenauf testified that he spent $11.08 to send FFG certified letters requesting that it stop making his telephone ring.  The Court awards him compensation for this expense.

R. Obenauf contends that he is entitled to punitive damages for his tortious-debt-collection claim.  Under New Mexico law, the general standard for punitive damages is proof of "willful, wanton, malicious, reckless, oppressive, fraudulent or in bad faith" conduct.  Akins v. United Steel Workers of Am., 148 N.M. 442, 450 237 P.3d 744, 752 (2010).  R. Obenauf asserts that "FFG acted recklessly in collecting without a license and in continuing to place telephone calls to Mr. Obenauf's home despite receipt of the December 20 letter."  Brief at 18.  Again, R. Obenauf has not established that FFG's being unlicensed violates CARA.  See Lothschuetz v. Carpenter, 898 F.2d at 1205 (rejecting "[t]he plaintiffs contend that the district court's entry of a default judgment as to liability resulted in the conclusive establishment of actual malice as alleged in the plaintiffs' complaint," and thereby punitive damages).  R. Obenauf does not incorporate his allegation that FFG willfully called him into his tortious debt collection claims, and his allegations and evidence do not support such a finding.  The evidence is a most in equipoise that FFG willfully called R. Obenauf, and the Cour finds it is more likely that it called negligently.  Additionally, the Court is unconvinced that a single

telephone call around noon that R. Obenauf apparently did not answer amounts to "willful, wanton, malicious, reckless, oppressive, fraudulent or in bad faith" conduct. <u>Akins v. United Steel Workers of Am.</u>, 148 N.M. at 450 237 P.3d at 752. The Court therefore will not award R. Obenauf punitive damages.

      **IT IS ORDERED** that: (i) the requests in the Plaintiff's Brief on Damages, filed April 8, 2011 (Document No. 12), are granted in part and denied in part; (ii) the Court orders Defendant Frontier Financial Group, Inc. ("FFG") to pay Plaintiff Richard Obenauf $150.00 for emotional distress, $300.00 in statutory damages, and $11.08 in compensatory damages; (iii) the Court enjoins FFG from making R. Obenauf's telephone ring at the telephone number 505-881-5245; (iv) the Court awards R. Obenauf $2,500.00 in attorney's fees; and (v) the Plaintiff's Unopposed Motion for Leave to File Notice of Additional Authority, filed May 3, 2011 (Doc. 14) is granted.

                                     _____

                                       UNITED STATES DISTRICT JUDGE

*Counsel:*

Rob Treinen
Treinen Law Office
Albuquerque, New Mexico

    *Attorneys for Plaintiff*